SYLLABUS

(This syllabus is not part of the opinion of the Court. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Supreme Court. Please note that, in the interest of brevity, portions of any opinion may not have been summarized.)

**State v. Xiomara Gonzales (A-5-15) (075911)**

**Argued September 12, 2016 -- Decided November 15, 2016**

**Albin, J., writing for a unanimous Court.**

In this appeal, the Court considers the proper scope of the plain-view exception to the warrant requirement under Article I, Paragraph 7 of the New Jersey Constitution and whether inadvertent discovery of contraband or evidence of a crime should remain a predicate for a plain-view seizure.

The constitutional question in this case arises out of defendant Xiomara Gonzales's appeal from the denial of her motion to suppress evidence seized by police from the vehicle she was driving on February 7, 2009. Pursuant to their ongoing investigation of a drug-distribution scheme, the police learned that Gonzales and a codefendant were going to retrieve a package that day that the Prosecutor's Office suspected would contain a large quantity of heroin. After Gonzales and the codefendant made two stops in separate cars, the codefendant placed two blue plastic bags on Gonzales's back seat, and Gonzales headed toward the Garden State Parkway.

Two officers followed Gonzales. They saw her speed, turn left on a red light, and pass through a toll on the Garden State Parkway without paying. The officers pulled Gonzales over to the shoulder of the Parkway.

As Officer Perez approached Gonzales's car, he saw that items had spilled from the blue bags onto the rear floorboard. He "immediately identified" the spilled items as "bricks of heroin." Gonzales was arrested and the bags sealed. At a secure site, it was determined that the bags contained 270 bricks of heroin.

Gonzales was charged with first-degree distribution of more than five ounces of heroin, first-degree possession of heroin with the intent to distribute, third-degree possession of heroin, and second-degree conspiracy to commit racketeering. Gonzales moved to suppress the evidence.

The trial court denied the motion to suppress, determining that the plain-view exception to the warrant requirement justified the warrantless seizure of the heroin because Officer Perez (1) was lawfully present beside Gonzales's car; (2) discovered the heroin "inadvertently" due to the spillage; and (3) had specialized training and experience in narcotics detection that made the incriminating nature of the packaged heroin "immediately apparent" to him. The trial court therefore upheld the constitutionality of the search.

The Appellate Division reversed. Adhering to the plain-view test established in State v. Bruzzese, 94 N.J. 210, 236–38 (1983), cert. denied, 465 U.S. 1030, 104 S. Ct. 1295, 79 L. Ed. 2d 695 (1984), the appellate panel concluded that, because the motor-vehicle stop was a pretext to enable police to seize drugs they knew to be present in Gonzales's car, Officer Perez's discovery of the heroin did not meet the inadvertence prong of the plain-view exception. In reaching this conclusion, the panel did not address the fact that, since Bruzzese, the United States Supreme Court has expressly held that the "inadvertent" discovery of incriminating evidence is not a prerequisite for plain-view seizure. The panel also found that exigent circumstances did not justify the search because the police had time to obtain a warrant while pursuing Gonzales's car. The panel thus remanded the case for further proceedings.

The Court granted the State's petition for certification. 223 N.J. 164 (2015).

**HELD**: The Court now excises the inadvertence requirement from the plain-view doctrine. Because it is setting forth a new rule of law, the Court will apply the reformulated plain-view doctrine prospectively. Nevertheless, the Court holds that the trial court's finding of inadvertence is supported by credible evidence in the record. The Court therefore reverses the judgment of the Appellate Division and reinstates the trial court's denial of the motion to suppress.

1. The Court notes that both the New Jersey and Federal Constitutions protect against "unreasonable searches and seizures" and forbid the issuance of a warrant absent "probable cause." N.J. Const. art. I, ¶ 7; see U.S. Const. amend. IV. Warrantless searches are prohibited unless an exception to the warrant requirement applies such as the plain-view doctrine, which authorizes an officer to seize evidence or contraband that is in plain view. (pp. 15-16)

2. The United States Supreme Court established the factual predicates necessary to satisfy the plain-view exception in Coolidge v. New Hampshire, 403 U.S. 443, 465-72, 91 S. Ct. 2022, 2037-41, 29 L. Ed. 2d 695, 582-87 (1984). In that decision, a plurality of the Court established three requirements for the exception: (1) The officer must be lawfully in the viewing area when making the observation; (2) the evidence must be discovered inadvertently; and (3) the incriminating nature of the evidence to be seized must be immediately apparent to the officer. The purpose of the inadvertence requirement was to ensure that police obtain warrants when they have advance knowledge of incriminating evidence or contraband subject to seizure. The requirement was never adopted by a majority of the Court. (pp 16-20)

3. In Horton v. California, 496 U.S. 128, 110 S. Ct. 2301, 110 L. Ed. 2d 112 (1990), the United States Supreme Court interred the inadvertence requirement as a predicate for a plain-view seizure of evidence. The majority of the Court found that other aspects of search-and-seizure jurisprudence protect against the concerns that the inadvertence requirement aimed to address. The Court also rejected the inadvertence requirement because it necessitated a subjective inquiry into the officer's state of mind. The Court thus explicitly stated that inadvertence was not a necessary predicate to a plain-view seizure, a position that a majority of states have since adopted. (pp 20-23)

4. Before Horton was decided, this Court adopted the Coolidge plurality's formulation of plain view in Bruzzese. Even in espousing the three-prong plain-view standard, however, the Court expressed the view that the standard of objective reasonableness governs the validity of a search or seizure. This Court continued to apply the three-part test in the post-Horton era, but without occasion to assess whether a plain-view seizure would pass muster in the absence of inadvertence. (pp. 23-26)

5. The Court stresses the preference for objective standards over subjective inquiries in both federal and New Jersey search-and-seizure jurisprudence. (pp. 27-29)

6. The Court now excises the inadvertence requirement from the plain-view doctrine. The Court finds subjective inquiry into an officer's motives to be at odds with the standard of objective reasonableness that applies to a police officer's conduct under the New Jersey Constitution. The Court notes that the constitutional limiting principle of the plain-view doctrine is that the officer must lawfully be in the area where he observed and seized the item, and that it must be immediately apparent that the seized item is evidence of a crime. Because the Court sets forth a new rule of law, the Court will apply the reformulated plain-view doctrine prospectively. (pp 29-32)

7. Thus, the Court applies the now-defunct three-part plain-view test to the facts of this case. The Court concludes that all three parts of the test were met. The motor-vehicle violations gave the officers a reasonable and articulable suspicion to stop Gonzales's car, and Officer Perez's training made the nature of the spilled items "immediately apparent." Finally, the trial court's finding that the discovery was inadvertent was supported by sufficient credible evidence in the record, and the appellate panel should have deferred to that finding. (pp 32-35)

8. The Court observes that the appellate panel also erred in finding that the police lacked exigent circumstances to act, stressing that the officers were not required to watch helplessly as Gonzales drove away with what the authorities reasonably believed was a cache of drugs. Here, again, the plain-view observation of the spilled heroin provided the basis for the seizure of the contraband. (pp 35-36)

9. The Court provides guidance as to the limits of the plain-view exception and the continuing need to obtain a warrant when there is sufficient time to do so. (pp 36-37)

       The judgment of the Appellate Division is **REVERSED** and the trial court's denial of the motion to suppress is **REINSTATED**. The matter is **REMANDED** to the Appellate Division for consideration of the remaining sentencing issue.

       **CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA, PATTERSON, FERNANDEZ-VINA, SOLOMON, and TIMPONE join in JUSTICE ALBIN's opinion.**

STATE OF NEW JERSEY,

    Plaintiff-Appellant,

       v.

XIOMARA GONZALES,

    Defendant-Respondent.


        Argued September 12, 2016 – Decided November 15, 2016

        On certification to the Superior Court, Appellate Division.

        Frank Muroski, Deputy Attorney General, argued the cause for appellant (Christopher S. Porrino, Attorney General of New Jersey, attorney).

        Elizabeth C. Jarit argued the cause for respondent (Joseph E. Krakora, Public Defender, attorney; Matthew Astore, Deputy Public Defender, on the letter brief).

        Rebecca J. Livengood argued the cause for amicus curiae American Civil Liberties Union of New Jersey (Edward L. Barocas, Legal Director, Ms. Livengood, Mr. Barocas, Alexander R. Shalom, and Jeanne M. LoCicero, on the brief).

    JUSTICE ALBIN delivered the opinion of the Court.

    In this appeal, we must determine the proper scope of the plain-view exception to the warrant requirement under Article I, Paragraph 7 of the New Jersey Constitution.

    In State v. Bruzzese, 94 N.J. 210, 236-38 (1983), cert.

denied, 465 U.S. 1030, 104 S. Ct. 1295, 79 L. Ed. 2d 695 (1984), this Court adopted the plain-view exception as articulated in the plurality opinion in Coolidge v. New Hampshire, 403 U.S. 443, 91 S. Ct. 2022, 29 L. Ed. 2d 564 (1971). A warrantless seizure of evidence in plain view is justified when a police officer is lawfully in the area where he observed the evidence, it is "immediately apparent" that the item observed is evidence of a crime or contraband, and the discovery of the evidence is inadvertent. Bruzzese, supra, 94 N.J. at 236 (citing Coolidge, supra, 403 U.S. at 465-68, 470, 91 S. Ct. at 2037-40, 29 L. Ed. 2d at 582-85).

Since our decision in Bruzzese, the United States Supreme Court in Horton v. California, 496 U.S. 128, 130, 138-39, 110 S. Ct. 2301, 2304, 2308-09, 110 L. Ed. 2d 112, 118-19, 124 (1990), rejected the inadvertence prong of the plain-view exception. The Court in Horton found that the inadvertence requirement conflicted with the standard of objective reasonableness that guides police conduct under Fourth Amendment jurisprudence. Like federal jurisprudence, our recent state constitutional decisions have hewed to the view that, in determining the constitutionality of a seizure, our courts must look to whether "the search was objectively reasonable." See State v. Edmonds, 211 N.J. 117, 133 (2012) (quoting Bruzzese, supra, 211 N.J. at 219). Thus, "our Article I, Paragraph 7 jurisprudence primarily

2

has eschewed any consideration of the subjective motivations of a police officer in determining the constitutionality of a search or seizure." Ibid.

In this case, the trial court denied a suppression motion, determining that the police inadvertently discovered drugs in plain view during a lawful motor-vehicle stop. A panel of the Appellate Division reversed and suppressed the evidence. The panel found that the motor-vehicle stop was constitutional and the police officer was lawfully in a position to view the drugs inside the vehicle. The panel, however, concluded that because the officer had advance knowledge that drugs would be in the vehicle, the discovery was not inadvertent. On that basis, the panel determined that the warrantless seizure of the drugs did not conform to the requirements of the plain-view doctrine under Bruzzese.

We now hold that the inadvertence requirement for a plain-view seizure is at odds with the objective-reasonableness standard that governs our state-law constitutional jurisprudence. Accordingly, like the United States Supreme Court in Horton, and most other state courts, we now hold that an inadvertent discovery of contraband or evidence of a crime is no longer a predicate for a plain-view seizure. Provided that a police officer is lawfully in the viewing area and the nature of the evidence is immediately apparent (and other constitutional

3

prerequisites are met), the evidence may be seized. This holding is a new rule of law and therefore must be applied prospectively. Nevertheless, we conclude that the discovery of the drugs in this case was sufficiently inadvertent to satisfy the then existing plain-view standard. Accordingly, we reverse the appellate panel's suppression order.

I.

A.

Defendant Xiomara Gonzales was charged in a Monmouth County indictment with first-degree distribution of more than five ounces of heroin, N.J.S.A. 2C:35-5(b)(1); first-degree possession of heroin with the intent to distribute, N.J.S.A. 2C:35-5(b)(1); third-degree possession of heroin, N.J.S.A. 2C:35-10(a)(1); and second-degree conspiracy to commit racketeering, N.J.S.A. 2C:5-2 and N.J.S.A. 2C:41-2(d).[1] The trial court denied defendant's motion to suppress evidence. Afterwards, pursuant to a plea agreement, defendant pled guilty to third-degree conspiracy to possess heroin. Defendant was sentenced to time served -- the 1156 days she had served in jail from the date of her arrest to the entry of her plea. Defendant was ordered to pay requisite fines and penalties, and all

---

[1] Defendant was one of many named defendants in this multi-count indictment, alleging crimes committed between December 31, 2008, and March 24, 2009.

4

remaining charges were dismissed.

The focus of this appeal is defendant's motion to suppress evidence seized by police from the vehicle she was driving on February 7, 2009. Defendant claims that, after a motor-vehicle stop, the police conducted a warrantless search of her car in violation of Article I, Paragraph 7 of the New Jersey Constitution. The Honorable Jamie Perri, J.S.C., presided over a three-day suppression hearing during which she heard testimony from Detectives George Snowden and Scott Samis of the Monmouth County Prosecutor's Office, and Officer Wilfredo Perez and Sergeant Johnny Whitaker of the Newark Police Department. The relevant facts are substantially undisputed; the legal conclusions to be drawn from those facts, however, are hotly contested.

The testimony at the motion-to-suppress hearing detailed the events leading to the stop and search of defendant's motor vehicle and her arrest.

B.

In December 2008, the Monmouth County Prosecutor's Office began investigating a drug-distribution scheme involving a number of individuals, including codefendant Allen Height whose cell phone the Prosecutor's Office was wiretapping. Around the same time, the United States Drug Enforcement Agency (DEA) and the Newark Police Department were investigating codefendant

5

George Thompson, an owner of an East Orange bodega (grocery store) on the border of Newark, who was suspected of drug trafficking.[2]  While monitoring Height's cell phone on February 7, 2009, Detective Snowden of the Prosecutor's Office learned that Height and an unidentified female -- later revealed to be defendant -- intended to travel that day to Thompson's bodega to pick up a package that the Prosecutor's Office suspected would be a large quantity of heroin.  The Prosecutor's Office, the DEA, and the Newark police coordinated their efforts in staking out Thompson's bodega while Detective Snowden continued to intercept Height's incoming and outgoing calls.

At about 3:20 p.m., Detective Samis and other members of a surveillance team positioned themselves outside of the bodega. In the meantime, Detective Samis made arrangements to maintain the secrecy of the ongoing wiretap investigation in the event there was cause to arrest Height or others.  Officer Perez and Detective Thomas of the Newark Police Department were directed to dress in full uniform and operate a marked patrol vehicle so that any arrest would appear routine and unplanned.

At 3:54 p.m., a black Chevrolet Impala driven by Height and a red Toyota Camry driven by defendant, whose identity was still unknown, parked outside of Thompson's bodega.  Height exited the

---

[2] Height and Thompson were also charged with racketeering and various other crimes in the multi-count indictment.

Impala and entered the bodega carrying a plastic bag while defendant remained inside her vehicle. Afterwards, a van occupied by two females pulled up to the bodega, and one of the women entered the bodega. Meanwhile, the wiretap intercepted a call between Height and another individual in which the two discussed in code language narcotics or currency.[3] Fifteen minutes after his arrival, Height, accompanied by the woman, walked out of the bodega without the bag. He entered his Impala, and she entered her van.

Height's Impala, defendant's Camry, and the van drove in a convoy for five to ten minutes -- followed by the surveillance team -- to 256 South 7th Street in Newark, the location of one of Thompson's suspected stash houses. There, Height and the two females from the van entered the house while defendant remained inside the Camry. Ten to fifteen minutes later, Height departed from the house carrying two blue shopping bags. He walked to the Camry, opened its right rear passenger door, and placed the bags inside. Height then went to the driver's side of the Camry and had a brief conversation with defendant. Height returned to his Impala, and the two drove off with defendant following

---

[3] That individual was later determined to be Jonathan Thomas, who was charged in the same multi-count indictment in which defendant was named.

7

Height.  At this point, Detective Samis believed that the two blue bags in defendant's Camry contained narcotics, based on the wire intercepts and the surveillance.  A stop was not initiated in front of Thompson's stash house to avoid compromising the wide-ranging wiretap investigation that involved other targets.

At 4:34 p.m., Height called defendant and indicated that he had to return to the stash house, but would lead her to the Garden State Parkway.  During the intercepted call, Height instructed defendant to go "where you're safest at, where you are all the time."

Detective Samis determined that the wiretap investigation would be protected by effectuating a routine motor-vehicle stop and that the packages inside the vehicle would be secured either by a "search warrant, consent, or a plain view" observation.  Around this time, Officer Perez and Detective Thomas, who were in uniform and operating a marked Newark patrol vehicle, were directed to follow defendant.  They did so from several car lengths behind, observing defendant travelling at a speed of between fifty to fifty-five miles per hour in a twenty-five mile per hour speed zone.  At the intersection of South Orange and Maybaum Avenues, defendant turned left on a red light.  The officers continued following defendant as she headed toward the Parkway, all the while remaining in contact with other members of the surveillance team.

8

At 4:38 p.m., Height called defendant. During their intercepted conversation, defendant told Height she did not have the exact change for the toll, and he advised her to go straight through, beeping her horn first. After defendant passed through the Parkway's southbound exact-change toll station without paying, Officer Perez activated the lights to his patrol unit and pulled the Camry over on a narrow shoulder of the road. The surveillance team had advised Officer Perez that two blue shopping bags had been placed inside the Camry.

As Officer Perez approached the driver's side of the Camry, he observed through the rear-view window that some of the contents of the two blue bags had spilled onto the rear floorboard. He "immediately identified" the spilled items as "bricks of heroin." At this point, defendant was arrested. Detective Thomas handcuffed defendant and placed her in the patrol vehicle. Officer Perez then opened the Camry's rear door, "gathered up the spilled over bricks of heroin," and neatly and tightly put them inside the blue bags, knowing that the vehicle would be taken to a secure site.

Detective Samis and another officer drove the Camry to a garage operated by the DEA in Newark. Inside the two blue bags were 13,500 glassine envelopes totaling 270 bricks of heroin.[4]

---

[4] Each glassine envelope is known as a deck, and 50 decks equal a brick.

Judge Perri denied the suppression motion, determining "that the heroin in [defendant's] vehicle was properly seized, based upon [Officer] Perez's plain view observation after a valid motor vehicle stop." In reaching that conclusion, Judge Perri made the following findings. First, Officer Perez and Detective Thomas "conducted a motor vehicle stop . . . based on the reasonable and articulable suspicion that [defendant] had committed numerous traffic infractions," which included speeding, disregarding a red light, and failing to pay the Parkway toll. Second, the plain-view exception to the warrant requirement justified the warrantless seizure of the heroin inside the vehicle.

In Judge Perri's view, the plain-view seizure met the standard set forth in Bruzzese, supra: Officer Perez was "lawfully positioned alongside [defendant's] vehicle, following a valid motor vehicle stop, when [he] observed what he believed to be bricks of heroin"; Officer Perez "inadvertently" made his discovery because, despite his knowledge of an earlier drug transaction, the heroin had spilled from the bags permitting his observation; and the incriminating nature of the packaged heroin was "immediately apparent" to Officer Perez based on his specialized training and experience in narcotics detection.

Judge Perri therefore upheld the constitutionality of the

10

search.

D.

In an unpublished opinion, a panel of the Appellate Division reversed the trial court's denial of the suppression motion, holding that the seizure of the drugs from defendant's car could not be justified based on the plain-view exception.[5] Although the panel cited the Fourth Amendment to the United States Constitution, in addition to Article I, Paragraph 7 of the New Jersey Constitution, as a source of authority, the panel did not address the fact that in Horton, supra, the United States Supreme Court expressly stated that the "inadvertent" discovery of incriminating evidence is not a prerequisite for a plain-view seizure. Rather, the panel adhered to the Bruzzese plain-view test, including the inadvertence prong.

According to the panel, the record supported the trial court's finding that defendant's traffic violations provided Officer Perez with reasonable and articulable suspicion for the motor-vehicle stop. The panel, however, concluded that Officer Perez's discovery of the heroin in defendant's car did not meet the inadvertence prong of the plain-view exception. It reached that conclusion because "the presence of the drugs in

---

[5] Because the appellate panel granted the motion to suppress, it did not reach defendant's argument that the sentence imposed was excessive.

11

defendant's car was clearly known in advance, and the motor vehicle stop, as planned, was a pretext to enable police to seize the narcotics." The panel determined that the seizure of the heroin under the plain-view exception "violated defendant's rights under the federal and New Jersey Constitutions."

The panel also found that exigent circumstances did not justify the search because the police had sufficient time to secure a warrant while police officers trailed defendant through the streets of Newark after Height had placed the drugs in her car. The panel remanded the case for further proceedings in light of its suppression of the evidence.

We granted the State's petition for certification. State v. Gonzales, 223 N.J. 164 (2015). We also granted the motion of the American Civil Liberties Union of New Jersey (ACLU-NJ) to participate as amicus curiae.

II.

A.

The State urges this Court to align our state-law constitutional jurisprudence with Fourth Amendment jurisprudence, in particular Horton v. California, supra, which eliminated the requirement that police must discover incriminating evidence inadvertently to justify a lawful warrantless plain-view seizure. The State argues that the inadvertence requirement necessitates that courts probe the

12

motives and unarticulated suspicions of police officers and therefore is in conflict with the "objective-reasonableness test," which governs search-and-seizure law under Article I, Paragraph 7 of the New Jersey Constitution. The State contends that, so long as a police officer is lawfully in the place where the plain-view observation is made, it is irrelevant whether the officer harbored the hope -- the ulterior motive -- of making the observation. The State asks us to reverse the Appellate Division on either of two grounds: the police did not have to discover the drugs inadvertently or, alternatively, the inadvertence prong was satisfied, as the trial court found.

B.

Defendant maintains that this Court should not abandon the inadvertence prong of the plain-view exception, which has long been a part of our state-law jurisprudence, beginning with Bruzzese, supra. Defendant asserts that the State has failed to show any special justification for a departure from our precedents. In defendant's view, the inadvertence requirement is consonant with "the true touchstone of New Jersey's search-and-seizure law -- when the police have probable cause to believe that contraband will be at a certain place at a certain time, they must get a warrant." Accordingly, defendant submits that warrantless plain-view seizures are not lawful when the discovery of the evidence is not inadvertent. Defendant reasons

13

that because the discovery of the drugs in this case was not inadvertent, the Appellate Division must be affirmed.

C.

Amicus curiae ACLU-NJ encourages this Court not to adopt the Horton plain-view test, but rather to adhere to our state-law formulation of the plain-view exception in Bruzzese. The ACLU-NJ asserts that the Bruzzese plain-view standard is based on state-constitutional grounds and provides greater protection to New Jersey's citizens from unreasonable searches and seizures in the wake of Horton. According to the ACLU-NJ, the inadvertence requirement has continuing vitality because it deters pretextual searches -- "planned warrantless searches, where [the police] know in advance the location of certain evidence and intend to seize it," quoting State v. Damplias, 282 N.J. Super. 471, 478-79 (App. Div. 1995), certif. denied, 154 N.J. 607 (1998). The ACLU-NJ posits that abandoning the inadvertence requirement would offend the doctrine of stare decisis, noting that this Court employed all three prongs of the plain-view exception in State v. Earls, 214 N.J. 564, 592 (2013). The ACLU-NJ insists that the State has failed to show that the inadvertence prong is unworkable or is at odds with the standard of objective reasonableness.

III.

In light of the United States Supreme Court's decision to

14

eliminate the inadvertence requirement as part of the plain-view exception under the Fourth Amendment, Horton, supra, 496 U.S. at 141-42, 110 S. Ct. at 2310, 110 L. Ed. 2d at 126, we now address whether the inadvertence prong of the plain-view doctrine has continuing vitality under our State Constitution. We begin with a discussion of the constitutional underpinnings of the plain-view doctrine.

A.

Article I, Paragraph 7 of the New Jersey Constitution, like its federal counterpart, protects against "unreasonable searches and seizures" and forbids the issuance of a warrant in the absence of "probable cause." N.J. Const. art. I, ¶ 7; see U.S. Const. amend. IV. Under our constitutional scheme, the clear preference is that police officers secure a judicial warrant before executing a search. Edmonds, supra, 211 N.J. at 129. For that reason, "a warrantless search is presumptively invalid." Id. at 130. To justify a warrantless search, the State must establish that the search falls into "one of the 'few specifically established and well-delineated exceptions to the warrant requirement.'" Ibid. (quoting State v. Frankel, 179 N.J. 586, 598, cert. denied, 543 U.S. 876, 125 S. Ct. 108, 160 L. Ed. 2d 128 (2004)). One such exception to the warrant requirement authorizes a police officer to seize evidence or contraband that is in plain view. Bruzzese, supra, 94 N.J. at

15

235-36.  It is the contours of the plain-view exception that are at issue in this case.

The plain-view exception has long been part of our search-and-seizure jurisprudence, Coolidge, supra, 403 U.S. at 465, 91 S. Ct. at 2037, 29 L. Ed. 2d at 582, but not until 1971 did the United States Supreme Court in Coolidge define in a plurality opinion, for Fourth Amendment purposes, the factual predicates necessary to satisfy that exception, see id. at 465-72, 91 S. Ct. at 2037-41, 29 L. Ed. 2d at 582-87.  To understand how the plurality arrived at the plain-view test in Coolidge, we must first look to the facts of that case.

The case involved a murder investigation that targeted Coolidge as the prime suspect.  Id. at 445-46, 91 S. Ct. at 2027, 29 L. Ed. 2d at 570-71.  Law enforcement authorities secured from New Hampshire's Attorney General a warrant to search Coolidge's Pontiac automobile, which was believed to have played a role in the victim's disappearance.  Id. at 447, 91 S. Ct. at 2028, 29 L. Ed. 2d at 571-72.  The Pontiac was parked in Coolidge's driveway and "[was] plainly visible both from the street and from inside the house where Coolidge was actually arrested."  Id. at 447-48, 91 S. Ct. at 2028, 29 L. Ed. 2d at 572.  Two-and-a-half hours after Coolidge's arrest, the Pontiac was impounded.  Id. at 447, 91 S. Ct. at 2028, 29 L. Ed. 2d at 572.  A search of the car uncovered evidence linking Coolidge to

16

the crime.  Id. at 448, 91 S. Ct. at 2028, 29 L. Ed. 2d at 572.

The United States Supreme Court first determined that the warrant did not issue from a neutral and detached magistrate and therefore was constitutionally invalid.  Id. at 449-53, 91 S. Ct. at 2029-31, 29 L. Ed. 2d at 572-75.  Accordingly, the search of the car could pass muster under the Fourth Amendment only if the search fit within an exception to the warrant requirement. Id. at 453, 91 S. Ct. at 2031, 29 L. Ed. 2d at 575.  New Hampshire invoked the plain-view exception as a basis for the warrantless seizure of the car, claiming that the car was an instrumentality of the crime.  Id. at 464, 91 S. Ct. at 2037, 29 L. Ed. 2d at 581-82.

In an opinion authored by Justice Stewart, a plurality of the Court articulated three requirements for the plain-view exception: (1) the officer must be lawfully in the viewing area when making the observation, see id. at 468, 91 S. Ct. at 2039, 29 L. Ed. 2d at 584; (2) "the discovery of the evidence . . . must be inadvertent," id. at 469, 91 S. Ct. at 2040, 29 L. Ed. 2d at 585; and (3) the incriminating nature of the evidence to be seized must be "immediately apparent to the police," id. at 466, 91 S. Ct. at 2038, 29 L. Ed. 2d at 583.

The purpose of the inadvertence requirement, in part, was to acknowledge that "where the discovery is anticipated, where the police know in advance the location of the evidence and

17

intend to seize it," the police should secure a valid warrant. Id. at 470, 91 S. Ct. at 2040, 29 L. Ed. 2d at 585. In other words, in the absence of exigent circumstances, a warrant was required to seize the Pontiac. See id. at 471, 91 S. Ct. at 2040-41, 29 L. Ed. 2d at 586. The plain-view seizure of the car in Coolidge violated the inadvertence prong, and therefore the Fourth Amendment, because the "police had ample opportunity to obtain a valid warrant; they knew the automobile's exact description and location well in advance; they intended to seize it when they came upon Coolidge's property." Id. at 472, 91 S. Ct. at 2041, 29 L. Ed. 2d at 586-87.[6]

In a dissenting opinion, Justice White advanced the position that "the inadvertence rule is unnecessary to further any Fourth Amendment ends." Id. at 517, 91 S. Ct. at 2063, 29 L. Ed. 2d at 613 (White, J., dissenting). In Justice White's view, so long as police officers are lawfully in a place -- whether by authority of a warrant or an exception to the warrant requirement, or the place's designation as a public area -- "seizure of evidence without a warrant is not itself an invasion either of personal privacy or of property rights beyond that already authorized by law." Id. at 513-15, 91 S. Ct. at 2061-

---

[6] Justice Stewart, however, suggested that a plain-view discovery of contraband -- even if the discovery were not inadvertent -- might lead to a different outcome. See Coolidge, supra, 403 U.S. at 471-72, 91 S. Ct. at 2041, 29 L. Ed. 2d at 586.

18

63, 29 L. Ed. 2d at 610-12.  Justice White reasoned that the Fourth Amendment does not require officers to "guard [or] ignore the evidence while a warrant is sought" because "having a magistrate confirm that what the officer saw with his own eyes is in fact contraband or evidence of crime are not substantial constitutional considerations."  Id. at 516, 91 S. Ct. at 2063, 29 L. Ed. 2d at 612.  Thus, a police officer authorized by a warrant to search a home just for a rifle would not have to secure an additional warrant to seize other evidence of a crime observed in plain view, even if the observation was not inadvertent.  Ibid.

A majority of the United States Supreme Court never endorsed the inadvertence prong of the plain-view exception, even though it was applied in other plurality opinions.  In Texas v. Brown, the Court upheld the seizure of heroin from an automobile based on the plain-view doctrine as articulated in Coolidge.  460 U.S. 730, 743-44, 103 S. Ct. 1535, 1543-44, 75 L. Ed. 2d 502, 514-15 (1983).  Brown involved an automobile stop during which a police officer, experienced in drug detection, observed between the driver's fingers a party balloon that the officer reasonably believed contained narcotics.  Id. at 733-34, 103 S. Ct. at 1539, 75 L. Ed. 2d at 508.  The Court clarified that evidence of a crime is "immediately apparent" under the plain-view doctrine when the officer possesses "probable cause

19

to associate the property with criminal activity."  Id. at 741-42, 103 S. Ct. at 1543, 75 L. Ed. 2d at 513 (emphasis omitted) (quoting Payton v. New York, 445 U.S. 573, 587, 100 S. Ct. 1371, 1380, 63 L. Ed. 2d 639, 651 (1980)).  A plurality of the Court also determined that, "[w]hatever may be the final disposition of the 'inadvertence' element of 'plain view,'" the discovery of the heroin was sufficiently inadvertent to justify the seizure of the heroin.  Id. at 743, 103 S. Ct. at 1544, 75 L. Ed. 2d at 514-15 (emphasis added).

In a concurring opinion, Justice White maintained his disapproval of Coolidge's requirement "that plain-view seizures are valid only if the viewing is 'inadvertent.'"  Brown, supra, 460 U.S. at 744, 103 S. Ct. at 1544, 75 L. Ed. 2d at 515 (White, J., concurring).  The plurality's reference to the uncertain status of the inadvertence prong set the stage for a future challenge to the plain-view doctrine.

That challenge came in Horton v. California, 496 U.S. 128, 110 S. Ct. 2301, 110 L. Ed. 2d 112 (1990), where the United States Supreme Court interred the inadvertence requirement as a predicate for a plain-view seizure of evidence.  In Horton, two men, one armed with a machine gun and the other with a stun gun, robbed the victim in his home, stealing cash and jewelry.  Id. at 130, 110 S. Ct. at 2304, 110 L. Ed. 2d at 119.  A police sergeant applied for a search warrant of the defendant's

residence by filing an affidavit, providing probable cause for the search and describing the weapons and proceeds to be seized. Id. at 130-31, 110 S. Ct. at 2304, 110 L. Ed. 2d at 119. The search warrant issued by a magistrate, however, authorized only a search for the stolen property and not a search for weapons. Id. at 131, 110 S. Ct. at 2304, 110 L. Ed. 2d at 119. During the search, the sergeant did not find the proceeds of the robbery, but he did seize a machine gun, two stun guns, and a revolver that he observed in plain view -- weapons (other than the revolver) mentioned in the sergeant's affidavit. Id. at 131, 110 S. Ct. at 2304-05, 110 L. Ed. 2d at 119. The weapons were not discovered inadvertently because the sergeant, according to his testimony, "was interested in finding other evidence connecting [the defendant] to the robbery." Id. at 131, 110 S. Ct. at 2305, 110 L. Ed. 2d at 119.

The Court held that inadvertence was not a necessary component of the plain-view exception. Id. at 141-42, 110 S. Ct. at 2310, 110 L. Ed. 2d at 126. Writing for the majority, Justice Stevens explained that protection against unreasonable searches and seizures did not depend on the inadvertence prong, which he deemed superfluous to the requirement that a warrant particularly describe the place to be searched and things to be seized and the requirement that "a warrantless search be circumscribed by the exigencies which justify its initiation."

21

Id. at 139-40, 110 S. Ct. at 2309, 110 L. Ed. 2d at 124-25.
Horton held that "[s]crupulous adherence to these requirements
serves the interests in limiting the area and duration of the
search" and that once "the officer has a lawful right of access,
. . . no additional Fourth Amendment interest is furthered by
requiring that the discovery of evidence be inadvertent." Id.
at 140, 110 S. Ct. at 2309-10, 110 L. Ed. 2d at 125.

The Court also took issue with the subjective inquiry that
the inadvertence requirement mandated, explaining that
"evenhanded law enforcement is best achieved by the application
of objective standards of conduct, rather than standards that
depend upon the subjective state of mind of the officer." Id.
at 138, 110 S. Ct. at 2308-09, 110 L. Ed. 2d at 124. The Court
reasoned that merely because "an officer is interested in an
item of evidence and fully expects to find it in the course of a
search should not invalidate its seizure if the search is
confined in area and duration by the terms of a warrant or a
valid exception to the warrant requirement." Id. at 138, 110 S.
Ct. at 2309, 110 L. Ed. 2d at 124. The Horton Court recognized
that although "inadvertence is a characteristic of most
legitimate 'plain[-]view' seizures, it is not a necessary
condition" for such seizures. Id. at 130, 110 S. Ct. at 2304,
110 L. Ed. 2d at 118-19.

Since Horton, a majority of states have followed suit and

22

removed the inadvertence requirement from the plain-view analysis.  See, e.g., People v. Kluhsman, 980 P.2d 529, 534 n.6 (Colo. 1999); State v. Ainsworth, 801 P.2d 749, 753 n.9 (Or. 1990); Commonwealth v. Ellis, 662 A.2d 1043, 1049 & n.6 (Pa. 1995); State v. Wright, 706 S.E.2d 324, 327 (S.C. 2011) (adopting the Horton rule and noting that in doing so it "join[ed] . . . the majority of states").  But see State v. Meyer, 893 P.2d 159, 165 n.6 (Haw. 1995); Commonwealth v. Balicki, 762 N.E.2d 290, 298 (Mass. 2002).

B.

Following Coolidge and Brown, but before the United States Supreme Court finally set the contours of the plain-view doctrine in Horton, this Court addressed the plain-view exception in State v. Bruzzese, 94 N.J. 210, 235-39 (1983), cert. denied, 465 U.S. 1030, 104 S. Ct. 1295, 79 L. Ed. 2d 695 (1984).  Recognizing the unsettled state of federal jurisprudence on the plain-view doctrine at the time, this Court adopted the Coolidge plurality's formulation of plain view under Article I, Paragraph 7 of the New Jersey Constitution.  Id. at 237-38.

In Bruzzese, the defendant became a suspect in the burglary of a commercial establishment, where he had previously worked. Id. at 213-14.  The police uncovered the "distinctive sole imprint" of a boot on a door that had been kicked in during the

23

burglary.  Id. at 213.  A criminal records check of the defendant revealed an outstanding arrest warrant for contempt of court.  Id. at 214.  Detective Hicks went to the defendant's home for two purposes:  to arrest him and question him about the burglary.  Ibid.  The defendant was arrested at his home, but because he was not fully dressed, Detective Hicks and another officer accompanied him to his bedroom, where the defendant intended to put on some additional clothes.  Id. at 215.  Inside the bedroom, Detective Hicks noticed a pair of boots and examined the soles, which corresponded to the distinctive print left at the burglary scene.  Ibid.  The trial court suppressed the boots, and the Appellate Division affirmed, stating that "the observation and seizure of the boots . . . were in fact pretextual and arbitrary," in violation of our Federal and State Constitutions.  Id. at 219.

This Court reversed and held that Detective Hicks's seizure of the boots met the plain-view exception articulated in Brown and Coolidge.  Id. at 235-39.  We adopted the Coolidge/Brown formulation as the governing standard under Article I, Paragraph 7 of our State Constitution.  Id. at 236-38.

We stated "that the proper inquiry for determining the constitutionality of a search-and-seizure is whether the conduct of the law enforcement officer who undertook the search was objectively reasonable, without regard to [the officer's]

24

underlying motives or intent." Id. at 219. We declined "to engage in a costly and time-consuming expedition into the state of mind of the searching officer." Id. at 221. We expressed confidence that, in the long run, "the objective standard will protect the privacy of our citizens and prevent the police from exercising merely pretextual searches." Id. at 225.

The Court determined that the three-prong plain-view standard was satisfied.[7] Id. at 235-39. Specifically, the Court found that "[Detective] Hicks discovered the boots inadvertently." Id. at 238. In making that finding, however, the tension between the earlier espoused objective standard and the seemingly subjective nature of the inadvertence requirement was revealed. In rejecting the challenge to the inadvertence prong, the Court stated that "[t]he 'hope' nestled in the back of Detective Hicks's mind that he might learn something about the burglary in the course of defendant's arrest does not defeat the notion that his discovery of the boots was an inadvertent fortuity." Id. at 238. Clearly, if an objective standard governed, and Detective Hicks's subjective motives were irrelevant to the inquiry, then no concern would have been expressed about the particular thoughts Detective Hicks may have

---

[7] The Court also concluded that Detective Hicks had a lawful basis for accompanying the arrested defendant to his bedroom. Bruzzese, supra, 94 N.J. at 230-35.

harbored.

In the post-Horton era, we continued to apply the three-prong plain-view test. See Earls, supra, 214 N.J. at 592; State v. Mann, 203 N.J. 328, 340-41 (2010). But, importantly, in each case we concluded that the inadvertence prong was met, and therefore we had no occasion to address whether a plain-view seizure would pass muster in the absence of inadvertence. Earls, supra, 214 N.J. at 592; Mann, supra, 203 N.J. at 340-41. However, in State v. Johnson, we commented "that whatever remains of the 'inadvertence' requirement of plain view since Horton was satisfied in this case because the police officers did not know in advance that evidence would be found." 171 N.J. 192, 213 (2002) (emphasis added).

In the case before us, the issue is clearly joined. The Appellate Division reversed the trial court's denial of the suppression motion precisely because the State failed to establish that the plain-view seizure of the drugs occurred inadvertently. We granted certification to decide whether the inadvertence requirement has continuing viability under our state-constitutional jurisprudence.

We next discuss one of the central principles undergirding both Article I, Paragraph 7 of our State Constitution and the Fourth Amendment -- the notion that the reasonableness of a search or seizure is governed by an objective standard.

26

IV.

The United States Supreme Court has long held that the reasonableness of a police action under the Fourth Amendment is viewed objectively, based on the circumstances of the particular search or seizure, "regardless of the individual officer's state of mind." Brigham City v. Stuart, 547 U.S. 398, 404, 126 S. Ct. 1943, 1948, 164 L. Ed. 2d 650, 658 (2006); Scott v. United States, 436 U.S. 128, 138, 98 S. Ct. 1717, 1723, 56 L. Ed. 2d 168, 178 (1978) ("[T]he fact that the officer does not have the state of mind which is hypothecated by the reasons which provide the legal justification for the officer's action does not invalidate the action taken as long as the circumstances, viewed objectively, justify that action."). The Supreme Court has made clear that an officer's motives are not to be taken into account in analyzing the reasonableness of a search or seizure, asserting that "[a]n officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force; nor will an officer's good intentions make an objectively unreasonable use of force constitutional." Graham v. Connor, 490 U.S. 386, 397, 109 S. Ct. 1865, 1872, 104 L. Ed. 2d 443, 456 (1989).

This Court in Bruzzese, supra, expressly adopted the United States Supreme Court's "objective approach" to analyzing the reasonableness of searches and seizures, 94 N.J. at 220-21, and

27

specifically rejected the "pretext approach" advocated by the Bruzzese dissent, see id. at 244-53 (Pollock, J., dissenting). We have primarily "eschewed any consideration of the subjective motivations of a police officer in determining the constitutionality of a search or seizure" under Article I, Paragraph 7 of our State Constitution. Edmonds, supra, 211 N.J. at 133; see also State v. O'Neal, 190 N.J. 601, 614 (2007) (finding that search of defendant, whether immediately before or after arrest, was "objectively reasonable" because officers had probable cause to arrest).

Just four years ago in Edmonds, supra, we refined our analysis of the emergency aid exception to the warrant requirement, which in Frankel, supra, 179 N.J. at 600, allowed for an analysis of a police officer's motives in determining the validity of the search. 211 N.J. at 133. In Edmonds, we eliminated the factor that permitted an inquiry into the subjective motives of the officer rendering emergency-aid because, under our state-constitutional jurisprudence, delving into "the subjective motivation of the officer [is not] a legitimate consideration in our search-and-seizure analysis." Ibid. (citing O'Neal, supra, 190 N.J. at 613-14). We recognized that "the elusive attempt to plumb the subjective motivations of an officer will [not] meaningfully advance either the privacy interests of an individual or the ultimate determination of

28

whether a particular search or seizure was unreasonable under state law." Ibid.

Whether a police officer made an inadvertent discovery under the plain-view doctrine is a subjective inquiry. See Horton, supra, 496 U.S. at 138, 110 S. Ct. at 2308-09, 110 L. Ed. 2d at 124 (finding Coolidge plain-view test flawed because it "depend[s] upon the subjective state of mind of the officer"); Damplias, supra, 282 N.J. Super. at 478-79 ("[T]he purpose of the requirement is to prevent warrantless pretextual searches and seizures."). Indeed, the appellate panel in this case found that the inadvertence prong was not met because of the subjective motivations of the police: "[T]he presence of the drugs in [the] defendant's car was clearly known in advance, and the motor vehicle stop, as planned, was a pretext to enable police to seize the narcotics."

V.

Our federal- and state-constitutional jurisprudence are squarely aligned in applying the standard of objective reasonableness in analyzing whether a search or seizure violates constitutional norms. We now reject the inadvertence prong of the plain-view doctrine because it requires an inquiry into a police officer's motives and therefore is at odds with the standard of objective reasonableness that governs our analysis of a police officer's conduct under Article I, Paragraph 7 of

29

our State Constitution.

We agree with the reasoning of Justice Stevens in Horton, supra, that faithful adherence to the dictates of the warrant requirement and to the limiting principles in the well-delineated exceptions to the warrant requirement will better advance the twin goals of evenhanded law enforcement and protecting the individual against unreasonable searches and seizures. See 496 U.S. at 138-40, 110 S. Ct. at 2308-10, 110 L. Ed. 2d at 124-25.

The requirement that a warrant particularly describe the place to be searched and the items to be seized -- not the inadvertence rule -- circumscribes the places where a police officer may look for evidence. See id. at 139-40, 110 S. Ct. at 2309-10, 110 L. Ed. 2d at 125. Likewise, the exigencies that give rise to exceptions to the warrant requirement -- not the inadvertence rule -- limit the scope of a search. See id. at 139-40, 110 S. Ct. at 2309, 110 L. Ed. 2d at 125. For example, under the emergency-aid doctrine, "[a] police officer entering a home looking for a person injured or in danger may not expand the scope of the search by peering into drawers, cupboards, or wastepaper baskets." Edmonds, supra, 211 N.J. at 134 (alteration in original) (quoting Frankel, supra, 179 N.J. at 599).

It makes little sense that, in a murder investigation, a

police officer armed with a warrant to search a home for a knife should ignore a rifle lawfully observed in plain view that is clearly linked to the murder. The whole notion of the plain-view doctrine is that, under such circumstances, the officer does not have to secure a separate warrant from a judge to confirm what he has seen with his own eyes.[8] The same reasoning applies to warrantless searches that are permissible under our federal and state constitutions. A police officer lawfully entering a home under the emergency-aid doctrine in response to an ongoing domestic-violence incident is not obliged to ignore bales of marijuana in plain sight even if he knew the homeowner was a drug dealer.

Under the plain-view doctrine, the constitutional limiting principle is that the officer must lawfully be in the area where he observed and seized the incriminating item or contraband, and it must be immediately apparent that the seized item is evidence of a crime.

We acknowledge that, in rejecting the inadvertence prong as a component of the plain-view exception as articulated in Bruzzese, we are setting forth a new rule of law. We therefore

---

[8] As Justice Stevens noted in Horton, supra, an officer with probable cause that an incriminating item is likely to be found during a search will have no reason purposely to withhold that information in a warrant application. See 496 U.S. at 138, 110 S. Ct. at 2309, 110 L. Ed. 2d at 124.

31

apply the reformulated plain-view doctrine prospectively.  State v. Witt, 223 N.J. 409, 449-50 (2015) (prospectively applying excision of "exigency" requirement from automobile exception to warrant requirement "because to do otherwise would be unfair and potentially offend constitutional principles that bar the imposition of an 'ex post facto law'" (citation omitted)). Accordingly, we must analyze whether the seizure of the heroin in this case satisfied the inadvertence requirement of the plain-view doctrine.

## VI.

### A.

We begin with our standard of review.  Appellate review of a motion judge's factual findings in a suppression hearing is highly deferential.  State v. Hubbard, 222 N.J. 249, 262 (2015). We are obliged to uphold the motion judge's factual findings so long as sufficient credible evidence in the record supports those findings.  State v. Elders, 192 N.J. 224, 243-44 (2007). Those factual findings are entitled to deference because the motion judge, unlike an appellate court, has the "opportunity to hear and see the witnesses and to have the 'feel' of the case, which a reviewing court cannot enjoy."  State v. Johnson, 42 N.J. 146, 161 (1964).

Judge Perri presided over a three-day suppression hearing, during which four witnesses testified.  The relevant testimony

is largely undisputed.  Based on wiretap intercepts of codefendant Height's cell phone, law enforcement authorities staked out codefendant Thompson's East Orange bodega, where Height was expected to pick up a large quantity of drugs.  The monitoring of Height's cell phone also revealed that a woman -- later identified as defendant -- would accompany Height.  Height and defendant arrived in two separate cars at the bodega.  Height entered the bodega alone carrying a bag and left carrying nothing.  He and defendant then drove in separate cars to Thompson's Newark stash house, which Height entered alone.  Height exited carrying two bags, which he placed in the rear of defendant's car.

At this point, the law enforcement authorities had reason to believe, based on the wiretap intercepts and the surveillance, that the two bags carried drugs.  An arrest at that time, however, would have compromised the ongoing investigation, and therefore the authorities decided to effectuate a routine motor-vehicle stop.  The plan was to secure the bags by way of a search warrant, consent, or a plain-view observation.

Defendant drove off separately from Height.  Newark police officers, following defendant, observed her make three motor-vehicle violations:  speeding, turning left on a red light, and failing to pay the Garden State Parkway toll.  The officers then

pulled defendant over as she entered the Parkway in a congested area of the roadway. One of the officers observed in plain view decks of heroin spilled from the bags in the rear of the car. The officers seized the drugs, and the vehicle was taken to a DEA garage. Judge Perri determined that the seizure met the plain-view doctrine.

Judge Perri found, and the appellate panel agreed, that the officers had a reasonable and articulable suspicion to justify the stop of defendant's car on the basis of the motor-vehicle violations. Judge Perri also found, and the appellate panel agreed, that the officer, from his lawful position outside the car, observed the decks of heroin and that, from the officer's years of specialized training and experience, the nature of the drugs was immediately apparent to him. Unlike the appellate panel, Judge Perri concluded that that the police discovered the evidence inadvertently. She determined that "[a]lthough [the officer] had been advised that it was suspected that a drug transaction had taken place, it was only when he approached the vehicle that he viewed the suspected heroin, which had spilled from the bags[.]" In other words, the officer could not have reasonably predicted that the contents of the bags would be revealed to his plain sight. Had the decks of heroin not spilled from the bags, the plan -- according to Detective Samis -- was to seek consent or a warrant to search the car. The

34

officer was not required to avert his eyes from the sight of the drugs that unexpectedly had fallen from the bags. Once the officer observed the spilled heroin in the rear of the car, the plain-view exception to the warrant requirement permitted the seizure of the drugs. See Mann, supra, 203 N.J. at 341 (upholding seizure of drugs from backseat of vehicle based on plain-view exception to warrant requirement). Judge Perri's finding of inadvertence is supported by sufficient credible evidence in the record.

The appellate panel failed to afford proper deference to that finding. Although the panel resolved that the officers lawfully stopped defendant's car based on the motor-vehicle violations, the panel also characterized the stop as pretextual in concluding that the discovery of the drugs was not inadvertent. These conflicting findings illustrate the dilemma of having a standard of objective reasonableness side-by-side with a test that pries into an officer's motives. The panel also clearly erred in concluding that the plain-view standard violated federal law because Horton, supra, does not require an inadvertent discovery.

Last, we do not agree with the panel's finding that police lacked exigent circumstances to act because time allowed for the securing of a search warrant. We realize that this issue is not germane to the outcome of this case because, as Judge Perri

35

found, the valid motor-vehicle stop gave the officers the lawful opportunity to make the plain-view observation. Nevertheless, we note that less than one-half hour passed from the moment the police observed the suspected drug-filled bags placed into defendant's car until the motor-vehicle stop -- hardly enough time to obtain a warrant while police officers trailed defendant's vehicle through the streets of Newark. Even had defendant not violated our motor-vehicle laws, the officers were not required to watch helplessly as defendant drove away with what the authorities reasonably believed was a cache of drugs.

Nevertheless, the officers' reasonable and articulable basis in stopping the car did not authorize a search of the vehicle absent a warrant or an exception to the warrant requirement. Here again, the plain-view observation of the spilled heroin provided the basis for the seizure of the contraband. See Mann, supra, 203 N.J. at 341.

In summary, a standard of objective reasonableness governs the validity of searches and seizures under both our Federal and State Constitutions. An objectively reasonable search or seizure is constitutional despite an officer's questionable motives, and an objectively unreasonable search or seizure cannot be saved despite an officer's unimpeachable motives.

B.

We conclude with two final points. Plain view, in most

36

instances, will not be the sole justification for a seizure of evidence because police must always have a lawful reason to be in the area where the evidence is found.  Thus, when necessary, the police will also be required to comply with the warrant requirement or one of the well-delineated exceptions to that requirement.

Moreover, the warrantless seizure of the parked car from the driveway in Coolidge would not be permissible under our state-law jurisprudence because the police had sufficient time -- days -- to secure a valid warrant.  In Witt, supra, we specifically noted that, in the case of a car suspected of containing drugs parked in a driveway, "if the circumstances giving rise to probable cause were foreseeable and not spontaneous, the warrant requirement applies."  223 N.J. at 448.  In short, when the police have sufficient time to secure a warrant, they must do so.

VII.

For the reasons expressed, we reverse the judgment of the Appellate Division suppressing the evidence.  The motion court's denial of the motion to suppress is reinstated.  We remand to the Appellate Division for consideration of the remaining sentencing issue.

CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA, PATTERSON, FERNANDEZ-VINA, SOLOMON, and TIMPONE join in JUSTICE ALBIN's opinion.

37