**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5363-17T1

STATE OF NEW JERSEY,

    Plaintiff-Appellant,

v.

VICTOR M. RUIZ,

    Defendant-Respondent.

_____

Submitted January 30, 2019 – Decided April 2, 2019

Before Judges Koblitz and Currier.

On appeal from Superior Court of New Jersey, Law Division, Camden County, Indictment No. 17-11-3225.

Mary Eva Colalillo, Camden County Prosecutor, attorney for appellant (Jason Magid, Assistant Prosecutor, of counsel and on the brief).

John F. Rooney, V, attorney for respondent.

PER CURIAM

On leave granted, the State appeals from the order suppressing the out-of-court identification of defendant Victor Ruiz. Because we find the trial judge properly utilized the Henderson[1] framework in her determination to suppress, we affirm.

We summarize the facts from the testimony presented at the suppression hearings. At approximately 10:00 p.m., on September 2, 2017, a ShotSpotter[2] alerted Camden County police officers that gunshots were fired at a gas station. At the scene, police found two victims with gunshot wounds, one of whom later succumbed to his injuries at the hospital.

In the course of their investigation, Detectives Jason Rowello and Edward Gonzalez reviewed the security camera footage from the gas station and saw a male, later identified as defendant, arrive at the gas station in a blue Chrysler driven by another man. Defendant was wearing a white shirt with red airbrushed artwork. Upon exiting the gas station's convenience store, defendant began speaking with another male, later identified as Angel Nieves Jr., who was standing next to a gas pump. Defendant, the vehicle's driver, and Nieves walked to the back of the gas station, out of view of the security camera. The footage

---

[1]  State v. Henderson, 208 N.J. 208 (2011).

[2]  ShotSpotter is a gunfire detection system.

A-5363-17T1

next depicted the driver and Nieves running away from the rear of the gas station. The driver got into the car, while defendant walked from the rear of the gas station and appeared to tuck an object into his waistband. Defendant then got into the car and left the gas station.

After reviewing the footage, Rowello and Gonzalez went to the hospital to take a taped statement from the surviving victim, Richard Brown, who identified defendant as the shooter. Brown stated defendant was wearing a white shirt with red airbrushed artwork at the time of the shooting. He added that defendant drove a blue Chrysler and lived on Kaighn Avenue in Camden. Brown said he had known defendant for several years and had spoken with him numerous times.

After searching the Sheriff Department's picture link database for an individual resembling the person in the video footage and described by Brown, Gonzalez identified defendant as a potential match. A motor vehicle registration check confirmed the registration of a blue Chrysler to defendant's name and address. A color photograph without identifiers was shown to Brown who identified defendant as the man who shot him and the deceased victim. In addition, the detectives located the blue Chrysler at defendant's address.

The detectives also spoke with Nieves, who provided a taped interview. During the interview, Nieves explained he was friends with Brown and on the night of the shooting, they got "high" behind the gas station's dumpster. Nieves then left Brown at the dumpster and returned to the front of the gas station. There, Nieves saw a car arrive, recognized the driver, and began talking to him. Nieves also saw another individual in the car in a white shirt with a design commemorating a deceased individual. Nieves followed the driver to the dumpster area behind the gas station. Once there, he observed a commotion before a "dude" pulled out a gun and fired "four or five" shots, prompting Nieves to run away.

Nieves told the detectives he would not be able to recognize the shooter because he "never [saw] him before," the gas station was "dark as hell," and he was not wearing his glasses during the shooting.

Rowello and Gonzalez asked Nieves to watch the security camera footage to "explain what was going on at the time." Gonzalez stated, "[a]nd we got – we got a person – who did it. You know what I mean? We [were] just doing follow ups." Nieves agreed to the detectives' request and while watching the footage, identified defendant as the shooter by his shirt.

4

After seeing images of defendant from multiple angles on the footage, Nieves was asked to view a photo array, which he again agreed to do. Nieves selected a photograph from the array, stating the person in the photograph was the "guy that had the gun" near the dumpster. He advised he was seventy percent confident that the person in the photograph was the shooter.

Following the identification, Rowello and Gonzalez reentered the interview room, thanked Nieves for viewing the array, and asked who he picked. Nieves replied, "[t]he guy I . . . saw in the video." Nieves explained he recognized the man in the array as being the man wearing the white shirt in the video. He also said he had seen defendant in Camden after the incident occurred, realizing it was defendant after viewing the video. Rowello then questioned Nieves again about the shooting and showed him a still photo from the gas station footage. Nieves again identified defendant.

Defendant was indicted for first-degree murder, N.J.S.A. 2C:11-3(a)(1), (2); first-degree attempted murder, N.J.S.A. 2C:5-1(a)(2), 2C:11-3(a)(1); second-degree aggravated assault, N.J.S.A. 2C:12-1(b)(1); second-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(a)(1); and second-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(b)(1).

Defendant moved for a <u>Wade</u>[3] hearing, seeking to exclude the out-of-court identification from Nieves. After argument and a review of the briefs, the trial court found suggestiveness in the pre-identification procedures utilized by Gonzalez and Rowello. Specifically, the trial court noted the detectives showed Nieves the video footage after he expressed an inability to identify the shooter. As a result, the court granted a <u>Wade</u> hearing.

After hearing testimony from the detectives, the trial judge issued an oral decision analyzing the out-of-court identification procedure under the framework of the system and estimator variables established in <u>Henderson</u>, 208 N.J. at 248-61. In addressing the photo array, the trial judge found the array was "fine" because "police procedure was followed," and thus, the "system variables were all followed properly."

In considering the estimator variables, however, the judge expressed concern that Nieves "said to the police from the start" that he could not identify the shooter, he was high at the time, it was dark, and he was not wearing his glasses. The court found there was suggestiveness by the police in showing Nieves the video and photo array after he told them he could not identify the shooter. The judge stated:

---

[3] <u>United States v. Wade</u>, 388 U.S. 218 (1967).

So, in terms of the system variables with respect to what led up to the photo array, when I look at it, I find the pre-identification procedures were suggestive. [Nieves] couldn't make an I.D., they show him a video, they show him a still photo, and then he's able to move on to make an I.D. They don't show him a still photo of anyone else . . . and they don't talk about, in the video surveillance, the other people that are with the person who is wearing the white airbrushed T-shirt in the video. They say to him we have a guy here, this is the guy, and then they show him the video. And in terms of multiple viewings, they show a video and a still photograph. There is no composite here. This is not a showup.

The trial judge concluded she required Nieves' testimony to determine whether there were "sufficient indicia of reliability to outweigh the corrupting effect of the suggestive identification procedure." See Manson v. Brathwaite, 432 U.S. 98 (1977); State v. Adams, 194 N.J. 186 (2008); State v. Madison, 109 N.J. 223 (1988).

After hearing testimony from Nieves and Detective Gonzalez, the judge found Nieves to be credible and fairly consistent in his testimony. She precluded the State from using Nieves' out-of-court identification, but permitted it to call Nieves as a witness to establish an in-court identification at trial, should it choose to do so.

In considering the State's subsequent motion for reconsideration, the trial court stated, in her analysis of Henderson, under the totality of the

7

circumstances, "defendant ha[d] demonstrated a very substantial likelihood of irreparable misidentification" if Nieves' out-of-court identification was admitted. After the State moved for leave to appeal, the judge provided an amplification statement. R. 2:5-1(b).

On appeal, the State argues:

> THE TRIAL COURT IMPROVIDENTLY SUPPRESSED THE OUT-OF-COURT IDENTIFICATION WARRANTING INTERLOCUTORY REVIEW IN THIS INSTANCE.

"Our standard of review on a motion to bar an out-of-court identification . . . is no different from our review of a trial court's findings in any non-jury case." State v. Wright, 444 N.J. Super. 347, 356 (App. Div. 2016) (citing State v. Johnson, 42 N.J. 146, 161 (1964)). "The aim of the review at the outset is . . . to determine whether the findings made could reasonably have been reached on sufficient credible evidence present in the record." Ibid. (citing Johnson, 42 N.J. at 162).

Our review "of a motion judge's factual findings in a suppression hearing is highly deferential. We are obliged to uphold the motion judge's factual findings so long as sufficient credible evidence in the record supports those findings." State v. Gonzales, 227 N.J. 77, 101 (2016) (citations omitted). The factual findings of the trial court are accorded deference because our "reading

of a cold record is a pale substitute for a trial judge's assessment of the credibility of a witness he [or she] has observed firsthand." State v. Nash, 212 N.J. 518, 540 (2013). Legal conclusions, however, are reviewed de novo. Id. at 541.

We are unpersuaded by the State's argument that the trial judge failed to properly weigh and analyze the system and estimator variables established in Henderson. The factors created by the Court in Henderson are used by the trial court to determine the reliability of an out-of-court identification by reviewing system variables and estimator variables. "System variables" are factors within the State's control. 208 N.J. at 248. These variables concern the manner in which the police conduct an identification procedure and include considerations such as: 1) the type of procedure used; 2) how a photo array was constructed and administered; 3) whether the witness is exposed to multiple viewings of the suspect; 4) what pre-identification instructions were given to a witness; and 5) whether suggestive feedback was given to a witness post-identification. Id. at 248-61.

Conversely, "estimator variables" are factors over which the legal system has no control. Id. at 261. Estimator variables are factors related to the incident in question, the witness, or the perpetrator. Ibid. They include stress; weapon focus; duration of the witness' observation of the perpetrator; distance and

lighting; the witness' characteristics that could impact an identification's accuracy; the perpetrator's appearance, including whether a mask or disguise was employed; racial bias; and the speed of an identification. Id. at 261-272.

"[I]f after weighing the evidence presented a court finds from the totality of the circumstances that defendant has demonstrated a very substantial likelihood of irreparable misidentification, the court should suppress the identification evidence." Id. at 289.

After several days of testimony, the trial judge found that showing Nieves the video surveillance before the photo array was unduly suggestive based on Nieves' initial responses to the detective's questions regarding his inability to identify the shooter. The credible evidence in the record supports the judge's conclusion that showing Nieves the gas station footage before conducting a photo array was suggestive. Gonzales, 227 N.J. at 101; State v. Michaels, 136 N.J. 299, 320 (1994).

Because defendant demonstrated the use of a suggestive interview technique, the burden then shifted to the State to "offer proof to show that the proffered eyewitness identification is reliable — accounting for system and estimator variables." Henderson, 208 N.J. at 289. However, "the ultimate

A-5363-17T1

burden remains on the defendant to prove a very substantial likelihood of irreparable misidentification." Id. at 289 (citing Manson, 432 U.S. at 116).

As the judge relied on system and estimator variables in finding Nieves' identification unreliable, the suggestiveness of the identification procedure resulted in a "very substantial likelihood of irreparable misidentification."

Nieves consistently stated he had no opportunity to view the shooter during the shooting and he did not see the shooting occur. He testified he was standing four to five feet away from the shooting, and was not wearing his glasses or contacts. Nieves had also used heroin prior to the incident, calling into question his perception abilities. Prior to viewing the video footage, Nieves could only identify the shooter by his white shirt and could not provide any physical details about the shooter. He consistently stated he did not know the shooter's identity until after he was shown the video footage.

Therefore, we conclude the judge properly identified and balanced the various system and estimator variables within the Henderson framework. The judge correctly followed the totality of the circumstances approach required when evaluating the admissibility of identification evidence. We find no basis to disturb the judge's conclusion that defendant established "a very substantial

11

likelihood of irreparable misidentification," requiring the suppression of Nieves' out-of-court identification.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-5363-17T1