282 N.J. Super. 471 (1995)
660 A.2d 570
STATE OF NEW JERSEY, PLAINTIFF-APPELLANT,
v.
DEMETRIOS DAMPLIAS, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued May 22, 1995.
Decided July 12, 1995.
*473 Before Judges DREIER, VILLANUEVA and BRAITHWAITE.
*474 Simon Louis Rosenbach, Assistant Prosecutor, argued the cause for appellant (Robert W. Gluck, Middlesex County Prosecutor, attorney; Mr. Rosenbach, of counsel and on the brief).
Jerome J. Convery argued the cause for respondent.
The opinion of the court was delivered by BRAITHWAITE, J.S.C. (temporarily assigned).
The State appeals by leave granted from an interlocutory order suppressing a blanket taken from the murder scene by the police. We reverse.
Mary Damplias, the victim, was estranged from her husband, the defendant, and for several months had been sleeping on a sofa in the den on the lower level of their home in Woodbridge. The defendant slept in an upstairs bedroom. Mary was allegedly having an affair with a co-worker, and had been out with him on the night of September 13, 1993.
At approximately 3:00 a.m. on September 14, 1993, Mary was stabbed by defendant twenty-six times with a kitchen knife and killed. Shortly after the incident, defendant went to the Woodbridge Police Department and told the police he had stabbed his wife. Defendant told the police that his wife was the aggressor, and had assaulted him with a kitchen knife in his bedroom on the upper level of the house. He stated he defended himself with a pillow. He claimed the argument continued to the den where he gained control of the knife and stabbed his wife.
While defendant was being questioned by Sergeant Kushner about the incident, the Identification Officer, Sergeant Haley, was at the crime scene collecting evidence, and photographing and securing the scene. At this time, Haley knew only a few facts about the incident and seized several bloody items from the area including a blue shirt, an answering machine, a telephone and several pillowcases. Although one of the pillowcases and the shirt were found on a bloodstained blanket, Haley did not seize the blanket because it had no special significance to him at the time. *475 Haley seized the bloodstained items to have a sample of the blood found in the room. Since he had seized the other items, he did not feel it was necessary to take the blanket. Before Haley left the crime scene, he was telephoned by Kushner from police headquarters and told where to find the knife used to kill Mary. Haley located and seized the knife.
On September 17, 1993, Kushner learned from the victim's family that she had been sleeping downstairs for several months. Kushner also learned that the family had in its possession Mary's personal notes describing the problems she had with defendant. On September 20, 1993, Kushner applied for and received two search warrants, one to look for "any and all bedroom pillows" at the crime scene and another to obtain the victim's "handwritten ledger/notes" from her family at another address. The next morning, Kushner procured a third search warrant to seize "handwriting samples" of the victim from the crime scene for the purpose of comparison.
On September 21, 1993, Haley and Kushner accompanied by Assistant Prosecutor Thomas Kapsak went to the crime scene to execute the warrants authorizing the search and seizure of "any and all bedroom pillows" and "any and all handwriting samples of Mary Damplias." When Haley arrived at the crime scene, he was aware that the blanket was there because he had seen it and photographed it on September 14, 1993. However, he still did not attach any significance to the blanket because he was unaware that at the time of the incident that Mary had been sleeping on the sofa. When Kushner and Kapsak obtained the search warrants on September 20 and 21, 1993, they were unaware of the existence of the blanket because they had not been to the scene, nor had they been told about the blanket by Haley or seen the photograph of the blanket. The photograph of the blanket was not available until September 22, 1993.
When Kapsak entered the room where the incident occurred, he saw the blanket and immediately recognized its significance to the crime. Haley, Kapsak and Kushner then discussed what they *476 knew about the incident and decided to seize the blanket. At the time the blanket was seized, the officers and Kapsak were aware of the following information: (1) the stabbing occurred on or near the sofa in the den; (2) Mary had been stabbed twenty-six times with a knife that they had recovered; (3) Mary had been sleeping in the den for several months, including the night of the incident; (4) there was a substantial amount of blood in the area of the sofa and on objects near the sofa, including the blanket; (5) Mary had the opportunity to fall asleep on the sofa prior to the stabbing; (6) other bloodstained items found on the blanket had already been seized; and (7) if Mary had been stabbed while sleeping there might be cut marks in the blanket.
After the blanket was seized without obtaining an additional warrant, it was sent to the State Police Laboratory for examination for cut marks. The laboratory determined that there were cut marks in the blanket.
On November 4, 1994, defendant filed a motion to suppress the blanket that was seized on September 21, 1993, without a warrant. The motion was granted. The State filed a motion for leave to appeal, which we granted.
On this appeal, the State contends, the motion to suppress should not have been granted. The State claims that the blanket should not have been suppressed because it was seized in accordance with the "plain view" doctrine. Defendant disagrees and contends that the blanket was properly suppressed because it was seized in violation of his rights under the Fourth Amendment of the United States Constitution and Article I, Paragraph 7 of the New Jersey Constitution.
The Fourth Amendment of the United States Constitution and Article I, paragraph 7 of the New Jersey Constitution both guarantee "`[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures....'" State v. Bruzzese, 94 N.J. 210, 216, 463 A.2d 320 (1983), cert. denied, 465 U.S. 1030, 104 S.Ct. 1295, 79 L.Ed.2d 695 *477 (1984) (quoting U.S. Const. amend IV; N.J. Const. art. 1, ¶ 7). It is important to emphasize that the Fourth Amendment does not prohibit all warrantless searches and seizures, only those that are unreasonable. Id. 94 N.J. at 217, 463 A.2d 320.
In general, a warrant obtained from a neutral magistrate is evidence of reasonableness. Id. at 218, 463 A.2d 320. On the contrary, a warrantless search is presumptively illegal and the State has the burden of proving that it was reasonable. State v. Valencia, 93 N.J. 126, 133, 459 A.2d 1149 (1983). Several exceptions to the warrant requirement have evolved over the years. Bruzzese, supra, 94 N.J. at 218, 463 A.2d 320. The exceptions to the warrant requirement are "justified on the grounds of reasonableness." Ibid. "A warrantless search that does not fall within one of the enumerated exceptions is presumptively unconstitutional." Ibid. See State v. Alston, 88 N.J. 211, 230, 440 A.2d 1311 (1981); State v. Young, 87 N.J. 132, 141, 432 A.2d 874 (1981); State v. Patino, 83 N.J. 1, 7, 414 A.2d 1327 (1980).
The State asserts that the exception to the warrant requirement involved here is the "plain view" exception enunciated in Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). There, the Court held that in order for an item seized in "plain view" to be constitutional: (1) the officer must be legally in a position to view the evidence; (2) the discovery of the evidence must be inadvertent;[1] and, (3) it must be immediately apparent to the officer that the objects in his view are evidence related to a crime or contraband. Id. 403 U.S. at 466, 91 S.Ct. at 2038, 29 L.Ed.2d at 583. However, in a subsequent case, Texas v. Brown, 460 U.S. 730, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983), the United States Supreme Court modified the "immediately apparent" requirement *478 to mean that "in order to seize evidence in "plain view" a police officer must have `probable cause to associate the property with criminal activity.'" Bruzzese, supra, 94 N.J. at 236-37, 463 A.2d 320 (quoting Texas v. Brown, supra, 460 U.S. at 741, 103 S.Ct. at 1542, 75 L.Ed.2d at 513. In Bruzzese, supra, the New Jersey Supreme Court adopted the revised "plain view" requirements. Id. at 238, 463 A.2d 320.
In granting defendant's motion, the trial judge opined:
In the case at bar, the first prong of the test in Bruzzese, supra, is met, as the police officers were lawfully on the premises at 8 Oxford Road pursuant to two valid search warrants. The third prong, whether the stricter "immediately apparent" standard or the more flexible "probable cause to associate the property with criminal activity" standard would apply, is also met as the blanket was visibly stained with blood. The second prong, however, is not met. Sergeant Haley photographed the crime scene on September 14, 1993, and knew where the blanket was located before the search on September 21, 1993. Therefore, its discovery on September 21, 1993 was not inadvertent, regardless of the other investigators' previous unawareness of the blanket's existence.
It is the State's position that the trial court erred in holding that the seizure was invalid because the blanket was not discovered inadvertently. The State argues that the inadvertent requirement is no longer an essential element of a constitutionally valid "plain view" search. The State cites Horton v. California, 496 U.S. 128, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990), in support of its position. Although the lack of inadvertence does not violate the Fourth Amendment, we do not have to decide whether the inadvertent requirement is no longer an essential element of a "plain view" search pursuant to Article I, Paragraph 7 of the New Jersey Constitution. Because here, we are satisfied that the inadvertent requirement has been met.
The purpose of the inadvertent requirement is to insure that a "plain-view seizure will not turn an initially valid (and therefore limited) search into a `general one[.]'" Horton, supra, 496 U.S. at 137-38, 110 S.Ct. at 2308, 110 L.Ed.2d at 123 (quoting Coolidge, supra, 403 U.S. at 470, 91 S.Ct. at 2039, 29 L.Ed.2d at 585). It is to prevent the police from engaging in planned warrantless searches, where they know in advance the location of *479 certain evidence and intend to seize it, relying on the "plain view" exception as a pretext.
Here, the trial court erred in concluding that the seizure of the blanket was not inadvertent because Sergeant Haley knew of its existence prior to the seizure on September 21, 1993. There are two questions that must be considered to determine whether the inadvertent requirement has been satisfied. The first question is: Did the police know in advance "where the evidence was located ... [?]" Bruzzese, supra, 94 N.J. at 236, 463 A.2d 320. The second question is: Did the police "intend beforehand to seize" the evidence? Ibid. If the answer to both questions is yes, then the inadvertent requirement is not satisfied, and the seizure under the "plain view" doctrine is invalid. However, if the answer to the first question is yes, but the answer to the second question is no, the inadvertent requirement is still satisfied because the purpose of the requirement is to prevent warrantless pretextual searches and seizures. Just because the police are aware of the location of an item of evidence does not preclude a finding of inadvertence if the police have no intention of seizing the evidence when they lawfully go to the place where the evidence is located. It must be shown that the police knew in advance where the evidence was located and intended beforehand to seize the evidence without a warrant.
The facts here do not demonstrate that the seizure of the blanket was done on pretext. The contrary is true. There is no evidence to show that the police went to the crime scene intending to seize the blanket. The police went to search for and seize pillows that might demonstrate "blood, cut marks" or "evidence of assault."
We are satisfied that "the discovery of the ... [blanket] was inadvertent, notwithstanding the fact that the searching officers" knew that a blanket was there "and ... [could] have been able to obtain a warrant to search for ... [it] since ... there is no indication that the warrant to search for ... [pillows] was obtained in bad faith or used as a ... [pretext] to seize the ... *480 [blanket]." United States v. Johnson, 707 F.2d 317, 321 (8th Cir.1983). Accordingly, the trial judge erred in suppressing the blanket seized on September 21, 1993.
Although not argued by the State below, we are also satisfied that there is an alternative basis to uphold the seizure of the blanket, the inevitable discovery rule. The inevitable discovery rule was set forth first by the United States Supreme Court in Nix v. Williams, 467 U.S. 431, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984), cert. denied, 471 U.S. 1138, 105 S.Ct. 2681, 86 L.Ed.2d 699 (1985), and was adopted by the New Jersey Supreme Court in State v. Sugar (Sugar II), 100 N.J. 214, 495 A.2d 90 (1985), certif. denied, 122 N.J. 187, 584 A.2d 247 (1990). The rule provides that "[e]vidence is admissible even though it was the product of an illegal search, `when ... the evidence in question would inevitably have been discovered without reference to the police error or misconduct, [for] there is no nexus sufficient to provide a taint.'" State v. Sugar (Sugar III), 108 N.J. 151, 156, 527 A.2d 1377 (1987) (quoting Nix, supra, 467 U.S. at 448, 104 S.Ct. at 2511, 81 L.Ed.2d at 390), certif. denied, 122 N.J. 187, 584 A.2d 247 (1990). In order to invoke the inevitable discovery rule, the State has to prove by clear and convincing evidence that
"(1) proper, normal and specific investigatory procedures would have been pursued in order to complete the investigation of the case; (2) under all of the surrounding relevant circumstances the pursuit of those procedures would have inevitably resulted in discovery of the evidence; and (3) the discovery of the evidence through the use of such procedures would have occurred wholly independently of the discovery of such evidence by unlawful means."
[Id. at 156-57, 527 A.2d 1377 (quoting Sugar II, supra, 100 N.J. at 235, 495 A.2d 90).]
Here, the blanket was seized during the execution of a search warrant for other evidence. The theory of the prosecution's case was still unfolding based on the information from the victim's family that defendant had been angry at her because she was having an affair with a co-worker. The house was in the possession of the police so that they could preserve the crime scene and have access to the evidence there during their investigation. Furthermore, the blanket had been photographed by Sergeant *481 Haley during his first visit to the crime scene but that photograph was unavailable at the time the blanket was seized. Ultimately, we are satisfied that Kapsak would have reviewed the photograph of the blanket, and upon reviewing it would have immediately recognized its significance just as he did on the day of the seizure.
Thus, we conclude that under the facts of this case, with the house secured and under the control of the police, that the police would have discovered the blanket through the use of "proper, normal and specific investigatory procedures ... wholly independently of the discovery of such evidence by unlawful means." Ibid.
We make one final observation. Although the police had secured and taken control of the house beginning on the morning of the incident, after that time, a warrant or an exception to the warrant requirement was needed to seize items from the house. There is no "murder scene exception" to the Fourth Amendment. Mincey v. Arizona, 437 U.S. 385, 395, 98 S.Ct. 2408, 2415, 57 L.Ed.2d 290, 302 (1978). See also New Jersey Arrest, Search & Seizure § 11:2 at 143-44 (1994).
The order suppressing the blanket is reversed, and the matter is remanded to the trial court for further proceedings consistent with this opinion.
NOTES
[1] As discussed infra, the inadvertent discovery requirement was eliminated by Horton v. California, 496 U.S. 128, 130, 110 S.Ct. 2301, 2304, 110 L.Ed.2d 112, 118-19 (1990). The Court concluded that "even though inadvertence is a characteristic of most legitimate `plain view' seizures, it is not a necessary condition." Ibid. The lack of inadvertence therefore does not violate the Fourth Amendment.