<div style="border: 1px solid black;">

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

</div>

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5274-16T1

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

REGINALD PIERRE, a/k/a
ANDRES TADEO,

     Defendant-Appellant.

_____

Submitted November 14, 2018 – Decided November 30, 2018

Before Judges Yannotti and Natali.

On appeal from Superior Court of New Jersey, Law Division, Essex County, Indictment No. 15-12-2922.

Joseph E. Krakora, Public Defender, attorney for appellant (Rochelle Watson, Assistant Deputy Public Defender, of counsel and on the brief).

Theodore N. Stephens II, Acting Essex County Prosecutor, attorney for respondent (Stephen A. Pogany, Special Deputy Attorney General/Acting Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

After the court denied his motion to suppress evidence from the warrantless search of his car, and for admission to the Pretrial Intervention (PTI) program, defendant Reginald Pierre conditionally pled guilty to one count of second-degree unlawful possession of a handgun, N.J.S.A. 2C:39-5(b). In exchange for his guilty plea, the State agreed to dismiss count two of the indictment which charged him with fourth-degree possession of a large capacity ammunition magazine, N.J.S.A. 2C:39-3(f), and recommend a non-custodial sentence of probation. Defendant appeals and raises the following arguments:

POINT I

BECAUSE THERE WERE NUMEROUS DISPUTES OF MATERIAL FACTS, INCLUDING WHETHER DEFENDANT VIOLATED THE OBSTRUCTION STATUTE – THE SOLE BASIS ASSERTED FOR THE STOP – THE TRIAL JUDGE WAS REMISS IN FAILING TO CONDUCT AN EVIDENTIARY HEARING. ALTERNATIVELY, EVEN UNDER THE STATE'S VERSION OF THE INCIDENT, THE PLAIN VIEW DOCTRINE DID NOT AUTHORIZE ENTRY INTO THE CAR.

    A. BY FAILING TO CONDUCT AN EVIDENTIARY HEARING TO RESOLVE NUMEROUS FACTUAL DISPUTES, THE TRIAL JUDGE ERRED.

    B. EVEN IF THE POLICE HAD REASONABLE SUSPICION TO STOP DEFENDANT'S CAR, THE PLAIN VIEW DOCTRINE DID NOT

2

PERMIT ENTRY INTO THE CAR TO RECOVER THE HANDGUN.

POINT II

DEFENDANT'S REJECTION FROM PTI FOR HIS FIRST OFFENSE, POSSESSION OF A WEAPON HE LEGALLY PURCHASED IN FLORIDA, CONSTITUTED A PATENT AND GROSS ABUSE OF DISCRETION.

A. DEFENDANT DEMONSTRATED EXTRAORDINARY CIRCUMSTANCES TO OVERCOME THE PRESUMPTION AGAINST PTI.

B. THE PROSECUTOR ABUSED HER DISCRETION BY PLACING UNDUE WEIGHT ON FACTORS INHERENT IN EVERY UNLICENSED POSSESSION CASE AND PENALIZING DEFENDANT BECAUSE THE OFFENSE OCCURRED IN NEWARK, A CITY "OVERWHELMED BY GUN RELATED VIOLENCE."

C. DESPITE OVERWHELMING EVIDENCE TO THE CONTRARY, THE PROSECUTOR'S RELIANCE ON DEFENDANT'S PURPORTED GANG MEMBERSHIP, WHICH WAS BASED ON A HEARSAY STATEMENT, WAS AN ABUSE OF DISCRETION.

D. THE PROSECUTOR'S REPEATED REFERENCES TO PRIOR DISMISSED MUNICIPAL CHARGES VIOLATED THE SUPREME COURT'S STRICT PROHIBITION ON CONSIDERING ARRESTS OR

3

DISMISSED CHARGES FOR ANY PURPOSES.

E. DEFENDANT'S REJECTION FROM PTI SUBVERTS THE PURPOSES OF THE PROGRAM AND IS A CLEAR ERROR IN JUDGMENT.

Having reviewed defendant's arguments in light of the record and applicable law, we affirm.

I.

The charges against defendant arose out of a motor vehicle stop in Newark. According to the State, on July 13, 2015, at approximately 8:40 p.m., detectives from the Newark Violence Reduction Initiative and Gang Enforcement Unit were patrolling an area known for drug and gang activity and gun violence. Detectives reported observing a black Chevrolet Camaro with Florida license plates stopped in the middle of the road, obstructing traffic with its car doors wide open. Detectives claimed they observed defendant arguing with a man near the Camaro and, believing a carjacking might occur, moved closer to investigate. Defendant shouted to the other individual, "[l]et's get the fuck out of here," and entered the driver's seat of the Camaro.

The detectives then parked one of their cars on the driver's side of the Camaro and the other unmarked vehicle parked slightly ahead. The detectives

reported observing defendant fumbling with an object between his legs. As detectives approached the Camaro from both sides with their flashlights, they observed a black handgun protruding from under the driver's seat on the floorboard. After removing defendant and the passenger from the vehicle, the police seized a 9 mm handgun with one live 9 mm gold ball round in the chamber and fourteen, 9 mm gold ball rounds in the magazine. A box of 9 mm ammunition was also seized from the vehicle's center console.

After defendant failed to provide a valid permit to carry the handgun, he was arrested and, in addition to the two counts in the indictment, was issued a motor vehicle summons for obstruction of traffic, N.J.S.A. 39:4-67. Subsequently, defendant provided the State with a copy of a New Jersey Firearms Purchaser Identification Card, issued on November 18, 2013, and a receipt from a firearms store in Florida, showing that the handgun was lawfully purchased. A search of the Firearms Investigation Unit records revealed, however, that defendant did not possess a firearm carry permit and the handgun was not registered.

Defendant disputed the State's version of events and contended that the warrantless search lacked probable cause and exigency, and the seizure of the

evidence[1] "was not justified by the plain view exception." In his counter statement of facts, defendant maintained that: (1) when the police stopped him, he "was safely double[-]parked on a quiet street and was in no way obstructing traffic;" (2) his car's doors were not wide open but only the "front passenger car door was ajar;" (3) he was not engaged in an argument and the individual he was speaking with was a friend; (4) he was not "fumbl[ing] with a gun;" and (5) when the police exited their cars he was sitting in his vehicle and was "immediately ordered . . . out of his car."

The court denied defendant's motion based on the parties' submissions. The court concluded that an evidentiary hearing was unnecessary because defendant "readily admit[ted] to . . . [a] motor vehicle violation" and "the balance of defendant's counter statement of facts . . . [were] not relevant to the disposition of [the] case." The court explained that the defendant's admission of being "double[-]parked on a public street . . . provided a reasonable, articulable basis or cause to conduct an investigatory stop," and "the officer's observations and subsequent seizure of the handgun was permissible pursuant

---

[1] On appeal, defendant does not address the ammunition seized from the console and we therefore consider any objections to that evidence waived. See N.J. Dep't of Envtl. Prot. v. Alloway Twp., 438 N.J. Super. 501, 505 n.2 (App. Div. 2015) ("An issue that is not briefed is deemed waived upon appeal.").

to the plain view doctrine and, accordingly, not a violation of defendant's constitutional rights . . . ."

The prosecutor denied defendant's request for admission in the PTI program and explained the bases for that decision in a detailed May 10, 2016 letter that addressed the factors listed in N.J.S.A. 2C:43-12(e). The court upheld the prosecutor's determination and concluded in its oral ruling that the prosecutor's decision did not represent a patent and gross abuse of discretion or misapplication of the statutory criteria.

## II.

Defendant first maintains that the court erred in denying his motion to suppress without conducting an evidentiary hearing. We review a trial court's denial of an evidentiary hearing for an abuse of discretion. State v. Broom-Smith, 406 N.J. Super. 228, 239 (App. Div. 2009).

When a defendant moves to suppress evidence obtained in a warrantless search, Rule 3:5-7(b) requires the State to file "a brief, including a statement of the facts as it alleges them to be." The defendant must then file "a brief and counter statement of facts." R. 3:5-7(b). That counter statement of facts must present "something more than the naked conclusion that the warrantless search was illegal, in order to obtain an evidentiary hearing pursuant to [Rule] 3:5-

7(c)," State v. Hewins, 166 N.J. Super 210, 215 (Law Div. 1979), and the facts must be "sufficiently definite, specific, detailed, and nonconjectural." Ibid. (quoting United States v. Ledesma, 499 F.2d 36, 39 (9th Cir. 1974)). "[O]nly when the defendant's counter statement places material facts in dispute [is] an evidentiary hearing . . . required." State v. Green, 346 N.J. Super. 87, 90 (App. Div. 2001).

We disagree with defendant's argument that an evidentiary hearing was required because his car was allegedly "safely double[-]parked" on a quiet Newark street with only the passenger door slightly ajar, and thus he was not "interfere[ing] with or interrupt[ing] the passage of other . . . cars or vehicles . . . " as proscribed by the obstruction statute. N.J.S.A. 39:4-67. As the court correctly noted, defendant admitted to a separate motor vehicle violation when he stated that he was double-parked. See N.J.S.A. 39:4-138(m) ("[e]xcept when necessary to avoid conflict with other traffic or in compliance with the directions of a traffic or police officer or traffic sign or signal, no operator of a vehicle shall . . . park the vehicle . . . [o]n the roadway side of any vehicle stopped or parked at the edge or curb of a street). That violation "provided a reasonable, articulable basis . . . [for the detectives] to conduct an investigatory stop." See State v. Carty, 170 N.J. 632, 639-40 (2002) ("A lawful stop of an automobile

must be based on reasonable and articulable suspicion that an offense, including a minor traffic offense, has been or is being committed."); see also State v. Amelio, 197 N.J. 207, 211-12 (2008). Thus, a hearing was not required to resolve immaterial factual disputes regarding whether defendant's vehicle was actually impeding traffic or if defendant was arguing with his friend before the detectives approached his car.[2]

Defendant also admitted he was sitting in his vehicle when the detectives approached. He did not allege "definite, specific [and] detailed" facts, Hewins, 166 N.J. Super at 215, disputing that the detectives, without entering his car, illuminated the interior of his vehicle with their flashlights, and observed the gun under the driver's seat on the floorboard. Thus, whether or not defendant was "fumbling with his gun" was irrelevant.

---

[2] We acknowledge that the trial court seemed to credit statements and observations by the detectives, disputed by defendant, that his double-parked vehicle was obstructing traffic. Because we have concluded an evidentiary hearing was not required in light of defendant's admission that he was double-parked, we need not address whether a hearing was necessary to establish if defendant's car was obstructing traffic or if the detectives had a basis to stop defendant's vehicle because they reasonably believed defendant was engaged in criminal activity.

A-5274-16T1

III.

We also disagree with defendant's contention that even if the detectives had reasonable suspicion to stop him, they were not permitted by the plain view doctrine to seize the handgun.  Under the United States Constitution and the New Jersey Constitution, individuals have the right to be free of unreasonable searches and seizures.  U.S. Const., amend. IV; N.J. Const. art. I, ¶ 7.  "A warrantless search is presumed invalid unless it falls within one of the recognized exceptions to the warrant requirement."  State v. Cooke, 163 N.J. 657, 664 (2000).  The plain view doctrine is a recognized exception to the warrant requirement.  State v. Bruzzese, 94 N.J. 210, 235-38 (1983).  The State bears the burden, by a preponderance of the evidence, to establish that the warrantless search or seizure was justified in light of the totality of the circumstances.  State v. Mann, 203 N.J. 328, 337-38 (2010).

For the plain view doctrine to apply, the State must establish three elements.  Bruzzese, 94 N.J. at 236-37.  First, the officer "must be lawfully in the viewing area."  Id. at 236.  Second, the officer must "inadvertently"[3] discover

---

[3] In State v. Gonzales, 227 N.J. 77, 99 (2016), our Supreme Court "reject[ed] the inadvertence prong of the plain view doctrine because it requires an inquiry into a police officer's motives and therefore is at odds with the standard of objective reasonableness that governs [the Court's] analysis of a police officer's

the evidence, "meaning that he did not know in advance where evidence was located nor intend beforehand to seize it." Ibid. This requirement is intended to "prevent the police from engaging in planned warrantless searches." State v. Damplias, 282 N.J. Super. 471, 478 (App. Div. 1995). Third, the officer must have "probable cause to associate the property with criminal activity." Bruzzese, 94 N.J. at 237 (quoting Texas v. Brown, 460 U.S. 730, 741-42 (1983)).

Here, when detectives approached defendant's double-parked car at 8:40 p.m., they were in a lawful position when they shined their flashlights in defendant's car and observed the handgun. Second, there was no evidence before the court to conclude the detectives had prior knowledge of the gun's existence or location or an intent to seize it. Finally, under the circumstances, the detectives had probable cause to associate a loaded handgun located under the driver's seat of a defendant's vehicle with criminal activity.

---

conduct . . . ." Because the Gonzales Court's holding was applied prospectively, and the search here occurred before the Supreme Court's decision, we assess the propriety of the seizure in accordance with the pre-existing, three-prong criteria. Under the previous standard, the inadvertence prong was satisfied if the detectives "did not know in advance where evidence was located nor intend beforehand to seize it." Bruzzese, 94 N.J. at 236.

IV.

We also conclude that the trial court did not commit reversible error in affirming the prosecutor's decision to deny defendant's admission into the PTI program. The court appropriately determined that the prosecutor's decision was not a patent and gross abuse of discretion.

A prosecutor's decision to admit or reject a defendant from a PTI program is given "extreme deference," State v. Kraft, 265 N.J. Super. 106, 112 (App. Div. 1993), and a trial or appellate court must find "a patent and gross abuse of discretion" to overturn a prosecutor's decision. Ibid. The court may not "substitute [its own] discretion for that of the prosecutor," even if the decision appears harsh. Id. at 112-13 (alteration in original). Further, it must be presumed that a prosecutor "considered all relevant factors before rendering a decision." Id. at 112 (quoting State v. Dalglish, 86 N.J., 503, 509 (1981).

PTI is a "[statewide] diversionary program through which certain offenders are able to avoid criminal prosecution by receiving early rehabilitative services expected to deter future criminal behavior." State v. Nwobu, 139 N.J. 236, 240 (1995). In assessing a defendant's fitness for PTI, a prosecutor must comply with Rule 3:28 and consider the factors enumerated in N.J.S.A. 2C:43-

12(e), which include the details of the case and defendant's past criminal record. State v. Roseman, 221 N.J. 611, 621 (2015).

The purpose of the PTI program is to "offer an alternative to prosecution and to promote deterrence through rehabilitation for qualified applicants." State v. K.S., 220 N.J. 190, 197 (2015) (citing N.J.S.A. 2C:43-12). Extreme deference is given to the prosecutor's decision because: 1) a prosecutor's "fundamental responsibility" is to "decide whom to prosecute," and 2) "a primary purpose of PTI [is] to augment, not diminish, a prosecutor's options." Kraft, 265 N.J. Super. at 111.

The PTI guidelines provide that defendants "charged with first or second-degree offenses [are] presumptively ineligible for admission" to PTI. Pressler & Verniero, Current N.J. Court Rules, cmt. 2 on R. 3:28-1 (2018). To overcome this presumption, a defendant must demonstrate compelling extraordinary circumstances or "something 'idiosyncratic' in his or her background." Nwobu, 139 N.J. at 252 (quoting State v. Jabbour, 118 N.J. 1, 7 (1990)).

Defendant contends that his legal purchase of the handgun in Florida should overcome the presumption against admission into the PTI program. He also claims that his immigration from Haiti as a child without either parent, graduation from high school, completion of one year of college, former

employment, and acceptance to college establishes the necessary extraordinary circumstances warranting admission. We disagree.

As defendant committed a second-degree offense, he was presumptively ineligible for PTI and was required to demonstrate compelling extraordinary circumstances to over this presumption. The prosecutor correctly determined that defendant "has not shown anything unusual and compelling justifying his admission" and concluded that defendant's admittance would "depreciate the seriousness of his Graves Act offense."

Defendant next argues that the prosecutor improperly placed undue weight on the nature of his offense when considering the N.J.S.A. 2C:43-12(e) factors. Specifically, he maintains that the prosecutor's assessment of certain aggravating factors "all rel[ied] on the same generic characteristics of every second-degree unlicensed gun possession offense," and undue weight was placed on the location of his offense and the neighborhood crime rates. Defendant's claim is without merit. The prosecutor thoroughly and correctly discussed the relevant factors in her May 10, 2016 letter, which included a specific analysis of seven aggravating and four mitigating factors.

Defendant also argues that the prosecutor improperly relied on the detectives' allegation that defendant identified himself as a member of a Haitian

gang. Defendant claims that the prosecutor was obliged to consider defendant's denial of gang membership and the possible language barrier that may have caused the detectives to incorrectly report that defendant volunteered himself as a member. We are satisfied that the prosecutor examined all relevant facts and evidence when she exercised her discretion in rejecting defendant's application. Under such circumstances, she was "free to disbelieve statements presented by defense witnesses and to instead credit the anticipated contrary testimony of the State's witnesses." State v. Lee, 437 N.J. Super 555, 568 (App. Div. 2014).

Defendant next argues that the prosecutor improperly considered his prior dismissed municipal charges contrary to K.S., 220 N.J. 190. In K.S., our Supreme Court held an applicant's "prior dismissed charges may not be considered for any purpose" where the facts related to the arrest are in dispute, or have not been determined after a hearing. Id. at 199. From our review of the prosecutor's May 10, 2016 letter, it is clear that she alluded to defendant's dismissed charges to rebut his claims that his then-current charges "represent[ed] [his] first contact with the criminal justice system" and did not serve as a basis for his rejection.

Indeed, when discussing mitigating factor nine (the applicant's criminal record and the extent he presents a substantial danger to others), the prosecutor

specifically acknowledged that defendant's municipal charges were dismissed. The prosecutor also stated that despite the dismissals, and defendant's possession of a loaded handgun, "the State . . . consider[s] defendant's lack of criminal convictions or adjudications as a mitigating factor." Further, when discussing mitigating factor twelve (history of physical violence towards others), the prosecutor again noted the dismissal of defendant's municipal charges and concluded "defendant does not have a history of the use of physical violence towards others."

Finally, defendant argues that the prosecutor's decision "subvert[s] the goals of [PTI]." He claims criminal sanctions will harm his future education and employment prospects and are too burdensome for a first-time offender with a lawfully purchased gun. While the prosecutor noted that defendant "may possess some positive qualities," she determined that defendant's circumstances were not extraordinary to overcome the presumption against PTI. The prosecutor's decision was not a patent and gross abuse of discretion.

To the extent not addressed, defendant's remaining arguments lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

16                                                                           A-5274-16T1