**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4854-17T4

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

MICHAEL WEAVER,

     Defendant-Appellant.

_____

Submitted October 2, 2019 – Decided October 28, 2019

Before Judges Sumners and Natali.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Indictment No. 17-03-0756.

Joseph E. Krakora, Public Defender, attorney for appellant (Howard Woodley Bailey, Designated Counsel, on the brief).

Theodore N. Stephens II, Acting Essex County Prosecutor, attorney for respondent (Caroline C. Galda, Special Deputy Attorney General/Acting Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

After the trial court denied his motions to suppress physical evidence, and to compel production of the arresting officers' personnel files, defendant Michael Weaver pled guilty to two counts of second-degree possession with intent to distribute a controlled dangerous substance ("CDS"), cocaine, in violation of N.J.S.A. 2C:35-5(a)(1) and (b)(2), one count of second-degree possession with intent to distribute a CDS, heroin, within 500 feet of public property, in violation of N.J.S.A. 2C:35-7.1(a), and one count of third-degree possession with intent to distribute a CDS, marijuana, within 500 feet of public property, in violation of N.J.S.A. 2C:35-7.1(a).

In exchange for his guilty plea, the State agreed to dismiss the remaining seven counts of the indictment which charged defendant with three third-degree charges for possession of cocaine, heroin, and marijuana, in violation of N.J.S.A. 2C:35-10(a) and N.J.S.A. 2C:35-5(a)(l) and (b)(11), and four second-degree charges for possession with intent to distribute cocaine within 500 feet of public property, and distribution of heroin, in violation of N.J.S.A. 2C:35-7.1(a) and N.J.S.A. 2C:35-5(a)(l) and (b)(2). The State also agreed to recommend an aggregate sentence of five years in state prison to run concurrently with a sentence for a parole violation.

A-4854-17T4

After defendant was sentenced in accordance with the plea agreement, he filed this appeal in which he raises the following issues:

POINT I

THE COURT ERRED IN DENYING [DEFENDANT'S] MOTION TO SUPPRESS BECAUSE THE OFFICER'S DISCOVERY OF THE EVIDENCE WAS NOT INADVERTENT AS REQUIRED UNDER THE PLAIN VIEW EXCEPTION IN PLACE AT THE TIME OF ARREST.

POINT II

THE COURT ERRED IN DENYING [DEFENDANT'S] MOTION TO SUPPRESS THE EVIDENCE OBTAINED AFTER OBTAINING A WARRANT BECAUSE IT WAS TAINTED BY THE EARLIER ILLEGAL SEARCH AND SEIZURE.

POINT III

THE COURT ERRED BY DENYING [DEFENDANT'S] REQUEST FOR AN IN CAMERA INSPECTION OF THE ARRESTING OFFICER'S PERSONNEL FILES.

Having reviewed defendant's arguments in light of the record and applicable law, we affirm.

I.

The following facts are gleaned from the suppression hearing, where the only witness to testify was Officer Lamin Baryoh. The court found Baryoh to

3

be "a soft-spoken gentleman, thoughtful in his answers, and wholly credible." It further found that "[his] testimony was believable and truthful" and that "[n]o evidence was presented that the investigating officers acted with anything other than good faith."

The charges against defendant arose from an anonymous call to the Newark Police Department regarding narcotics being sold by four African-American males from a blue Acura on the corner of Foster Street and Frelinghuysen Avenue, a high crime area. Baryoh and Sergeant Neil Laurie were dispatched to the area in response to the anonymous tip. As they turned onto Foster Street, they observed a car matching the description and license plate provided by the caller parked on the side of the road.

The officers drove up to the vehicle and parked a few feet away when they witnessed defendant, an African-American male, exit from the driver's side. Baryoh testified that defendant then removed a black object from his jacket or "around his waistband," that was about twelve inches in length, which "he . . . tossed into the vehicle[,] . . . closed the vehicle['s] [door] and started walking towards [the officers'] direction." According to Baryoh, he "suspected [the black object] could be a possible weapon."

Baryoh then approached the vehicle and looked through the driver's side window in order "to investigate and observe what [defendant] threw in the car." "In plain view, [Baryoh] saw a bag," which, based on his experience, was "what [he] suspect[ed] to be . . . CDS cocaine, in raw form," and "immediately notified [Laurie]."

Baryoh then opened the car door, as "[t]he door was unlocked," to confiscate the plastic bag when he noticed an additional bag of related drug paraphernalia on the passenger side. After retrieving both bags, the officers arrested defendant, issued him summonses for driving without a license and operation of a vehicle while in possession of narcotics, and towed the vehicle to the police station. Two days after the arrest, the officers obtained a search warrant for the vehicle based on an affidavit provided by Baryoh. The subsequent search produced additional cocaine, as well as heroin, marijuana, and a digital scale.

After being indicted for the eleven drug-related offenses, defendant filed three motions that sought to compel production of the arresting officers' personnel records for an in camera review, and to suppress the physical evidence seized as a result of the search warrant, and during the warrantless search. Defendant also filed a pro-se supplemental brief in support of the motions.

In support of defendant's motion for production of the arresting officers' personnel records, defendant made no specific arguments as to why Baryoh's personnel file should be produced. Defendant argued, however, that because Laurie was named as a co-defendant in a 2016 civil rights lawsuit, and was a defendant in a federal lawsuit regarding an alleged incident of improper conduct in 2008, "the credibility of the officers [was] particularly relevant and the defense [was] entitled to information that could be used for meaningful cross[-]examination . . . ."

Defendant failed to provide the court with any supporting materials that detailed the factual basis for the 2016 civil rights lawsuit. With respect to the federal lawsuit, defendant submitted as an attached exhibit to his motion a "portion of the [American Civil Liberties Union ("ACLU")] Petition for the Investigation into the Newark, New Jersey Police Department by the United States Department of Justice ["DOJ"]," which provided a summary of the 2008 incident.

The portion of the ACLU petition described an alleged incident in 2008 where a driver was cut off by "[f]ive men in plain clothes, wearing 'skull caps' or ski masks, [who] jumped out of the car with guns drawn but [did] not announc[e] themselves as police" who then "violently removed [the occupants]

from the vehicle, handcuffed [them], and verbally abused [them]." One occupant subsequently received three traffic summonses, which were later dismissed. After reporting the incident to Internal Affairs and receiving no response, the occupant alleged that another officer "followed him to his house and made unwarranted threats against him, and briefly detained him" as "retaliation for his [Internal Affairs] complaint." The occupants of the vehicle filed a federal lawsuit against the city and against six officers, including Laurie, which was settled for an undisclosed amount. There was no indication as to what role Laurie had in the described events.

In a September 22, 2017 order, the court denied defendant's motion without an evidentiary hearing. In its accompanying written opinion, the court explained that despite defendant's reference to the 2016 civil rights lawsuit against Laurie, and the aforementioned description of the federal lawsuit regarding the alleged incident of improper conduct in 2008 by the Newark Police Department, "[d]efendant has not made an allegation of wrongdoing against either officer involved in his arrest," or that either officer "engaged in similar conduct with [him]." The court further determined that "there [were] no allegations that [defendant] was mistreated by the officers or that they fabricated evidence against him" and that "there is no dispute whatsoever as to what was

found in the subject vehicle." Furthermore, defendant "[did] not provide information on what was alleged in [the 2016 civil rights] lawsuit," and the federal lawsuit regarding the alleged 2008 incident of improper conduct and related "investigation into the Newark Police Department was not an investigation into any one particular officer, and does not indicate any relevant information regarding . . . Laurie specifically."

Relying on State v. Harris, 316 N.J. Super 384, 397-98 (App. Div. 1998), the court concluded that defendant's right to cross-examination did not, under the circumstances, outweigh the need for confidentiality of police personnel records. Specifically, the court found "[d]efendant's supposition that Laurie's personnel files might contain some relevant material to impeach credibility is not enough to swing the balance . . . in [d]efendant's favor."

Defendant also sought to suppress the physical evidence seized as a result of the search warrant "because the further seizure of the evidence occurred pursuant to, after, and as a result of the invalid search of . . . defendant's vehicle, and because the search warrant was based on, and not wholly independent from the invalid warrantless search . . . ." In an October 11, 2017 order and written decision, the court denied defendant's motion, again without an evidentiary hearing, and noted that defendant failed to "provide any specific allegations . . .

to determine what statements [in the warrant] [were] false or misleading, or whether excising any such statements would leave sufficient probable cause to support the warrant." The court also rejected defendant's argument that the signature on the arrest and search warrants were invalid because they "were not signed by the same person" concluding that defendant's claim was a mere "allegation without any substantiating proof, or any indicia of any proof whatsoever."

Finally, as to defendant's motion to suppress evidence seized during the warrantless search, defendant claimed that the initial stop and subsequent search lacked probable cause. Specifically, defendant "denie[d] removing a black object from his pocket and leaving it in the vehicle" and stated that "he was not inside the vehicle, and was on the street when the officers pulled up." Defendant also argued that "[t]he warrantless search of the [vehicle] was not supported by probable cause because the officers did not have enough information to reasonably assert that a crime had been committed or to corroborate the anonymous tip." He maintained that the vehicle stop was not lawful and the search was unconstitutional because "[t]he officers . . . created probable cause [by issuing summonses] and relied on information from [an] anonymous caller to stop defendant[']s vehicle to conduct a warrantless search."

Defendant also argued that the seizure did not meet the requirements of the plain view exception because "[Baryoh] did not have a legal basis for inspecting the car in the first place," "he was specifically looking for items associated with illegal narcotic activity," "[he] could not have seen the bag from outside the vehicle due to the tinted windows[,] . . . and . . . there was no black bag on the driver's seat . . . ."

The court conducted an evidentiary hearing with respect to the motion and after considering Baryoh's testimony, issued an October 12, 2017 order and written opinion denying defendant's application. The court found that "[d]efendant saw the two officers . . . and appeared . . . to be very nervous" when he "removed an item that plausibly could potentially have been a weapon and threw it into the open car." The court further found that "based on the totality of what they had observed, [the officers] clearly had the right to further investigate," "were on a public street[] where they had a lawful right to be," and "were able to make their discovery merely by peering into the window as any passerby . . . may have done." Upon inspection of the vehicle, "it was immediately apparent to Baryoh, based on his training and experience, that what he saw was CDS and related paraphernalia." Defendant moved for reconsideration, which the court denied.

In defendant's first point, he maintains that the court erred in denying his motion to suppress evidence seized from the initial warrantless search because Baryoh's actions were not inadvertent and, thus, all requirements of the plain view exception were not satisfied. Defendant also argues that the court's factual findings were not supported by substantial, credible evidence. Specifically, he maintains that the court's October 12, 2017 written decision incorrectly stated that the officers saw defendant "remove a black item from his waist, turn and throw it into the driver's side window," suggesting the window was open, before Baryoh made his plain view observation. Defendant also maintains that the court improperly relied upon the police incident report, as it was not introduced into evidence, which indicated that defendant appeared nervous. We disagree with all of these arguments.

In reviewing the trial court's suppression ruling and the record from the evidentiary hearing, we afford considerable deference to the court's role as a fact-finder. Our review of the court's factual findings is "exceedingly narrow." State v. Locurto, 157 N.J. 463, 470 (1999). We must defer to those factual findings "so long as those findings are supported by sufficient evidence in the record." State v. Hubbard, 222 N.J. 249, 262 (2015); State v. Elders, 192 N.J.

224, 243 (2007).  As part of that deference, we particularly respect the court's assessments of credibility, given the court's ability to have made "observations of the character and demeanor of witnesses and common human experience that are not transmitted by the record."  Locurto, 157 N.J. at 474.  However, we owe no deference to the trial judge's conclusions of law.  See State v. Hinton, 216 N.J. 211, 228 (2013).  Nor are we "obliged to defer to clearly mistaken findings . . . that are not supported by sufficient credible evidence in the record."  State v. Gibson, 218 N.J. 277, 294 (2014).

Under the United States Constitution and the New Jersey Constitution, individuals have the right to be free of unreasonable searches and seizures.  U.S. Const., amend. IV; N.J. Const. art. I, ¶ 7.  "A warrantless search is presumed invalid unless it falls within one of the recognized exceptions to the warrant requirement."  State v. Cooke, 163 N.J. 657, 664 (2000).  The plain view doctrine is a recognized exception to the warrant requirement.  State v. Bruzzese, 94 N.J. 210, 235-38 (1983).  The State bears the burden, by a preponderance of the evidence, to establish that the warrantless search or seizure was justified in light of the totality of the circumstances.  State v. Mann, 203 N.J. 328, 337-38 (2010).

For the plain view doctrine to apply, the State must establish three elements. Bruzzese, 94 N.J. at 236-37. First, the officer "must be lawfully in the viewing area." Id. at 236. Second, the officer must "inadvertently"[1] discover the evidence, "meaning that he did not know in advance where evidence was located nor intend beforehand to seize it." Ibid. This requirement is intended to "prevent the police from engaging in planned warrantless searches . . . ." State v. Damplias, 282 N.J. Super. 471, 478 (App. Div. 1995). Third, the officer must have "probable cause to associate the property with criminal activity." Bruzzese, 94 N.J. at 237 (quoting Texas v. Brown, 460 U.S. 730, 741-42 (1983)).

Here, the warrantless search of defendant's vehicle satisfied the former inadvertence requirement of the plain view exception. Indeed, the credible evidence from the suppression hearing supported the court's finding that the officers witnessed defendant "exit[] a comprehensively described vehicle that

---

[1] In State v. Gonzales, 227 N.J. 77, 99 (2016), our Supreme Court "reject[ed] the inadvertence prong of the plain view doctrine because it requires an inquiry into a police officer's motives and therefore is at odds with the standard of objective reasonableness that governs [the Court's] analysis of a police officer's conduct . . . ." Because the Gonzales Court's holding was applied prospectively, and the search here occurred before the Supreme Court's decision, we assess the propriety of the seizure in accordance with the pre-existing, three-prong criteria. Under the previous standard, the inadvertence prong was satisfied if the detectives "did not know in advance where evidence was located nor intend beforehand to seize it." Bruzzese, 94 N.J. at 236.

they had . . . been sent to investigate as a potential locus for drug transactions" and observed defendant "[remove] a black object which he then tossed into the vehicle." The court further found that, "[b]ased upon the total[it]y of the circumstances[,] . . . from tip to officer observations, the officers could reasonably conclude that the . . . tip was credible and . . . further investigation was warranted." Further, as the court properly noted, when Baryoh approached defendant's vehicle, he "[was] on a public street, where [he] had a lawful right to be" and observed the cocaine "by peering into the window as any passerby on the street may have done."

Defendant maintains that the court incorrectly found that "Officer Baryoh observed [defendant] turn and throw [the black item] into the driver's side window," when Baryoh actually testified that defendant "removed a black object which he then tossed into the vehicle and closed the vehicle . . . ." Notwithstanding the court's error in describing the manner in which the black object was thrown into the car, the court's factual findings that the bag containing CDS was in plain view is fully supported by Baryoh's testimony, which the court found to be credible.

In this regard, Baryoh testified that he looked through the window, that he made his observations in the morning, in a bright sun, and without the need of a

14

flashlight. That the window was closed, and not open, was inconsequential to the court's finding that the police satisfied all three elements of the plain view doctrine, as Baryoh was in a lawful position on the street when he looked into the vehicle, there was no evidence that the police had prior knowledge that the CDS would be in plain view on the front seat of the vehicle, and they had probable cause, under the totality of the circumstances, to associate the CDS with criminal activity. Bruzzese, 94 N.J. at 236-37.

We also find no reversible error with respect to the court's reliance on the police incident report. Defendant argues that the report was never introduced into evidence, Baryoh never testified that defendant appeared nervous, and that the black item "could have been anything." Defendant further asserts that the use of the report improperly allowed the court to conclude that "Baryoh had a reason to believe the black item might be a weapon," justifying the search, despite the fact that "there was no reasonable suspicion to believe that the item was a weapon." We disagree.

We note that although Baryoh believed that the black item "could have been anything," whether he observed defendant acting nervous was unnecessary to justify the search. Baryoh testified that the CDS was plainly visible when he looked through the window of the vehicle, which he properly investigated based

on the anonymous tip, which correctly identified the make, model and license plate number of a vehicle involved in the distribution of CDS by African-American males in a high crime area and after he witnessed defendant, an African-American male, throw a black object he believed to be a weapon into the vehicle. Thus, the court's factual findings that the totality of the circumstances warranted further investigation of defendant and his vehicle is fully supported by Baryoh's testimony and renders the fact from the police report that defendant was "acting nervous" unnecessary to justify Baryoh's decision to approach the vehicle on a public street and look into the window where he viewed the CDS in plain view.[2]

## III.

We also disagree with defendant's second point that the evidence obtained pursuant to the warrant should have been suppressed because it was tainted by

---

[2] We also reject defendant's argument that Baryoh's plain view observation was not inadvertent because he allegedly suspected that a CDS was in the vehicle when he approached it. In Gonzales, the police stopped a vehicle for motor vehicle violations. Prior to the stop, the officer was advised that "it was suspected that a drug transaction had taken place." Gonzales, 227 N.J. at 103. The Supreme Court held that the officer's plain view observation of CDS in the vehicle was nevertheless inadvertent because the officer observed drugs that had spilled from bags on the back seat of the vehicle and "the officer could not have reasonably predicted that the contents of the bags would be revealed to his plain sight." Ibid.

the initial, allegedly illegal warrantless search. Because defendant has not demonstrated that there was an absence of probable cause supporting the issuance of the warrant, that it was issued in bad faith, or that the search of the vehicle was otherwise unreasonable, we discern no basis to declare the warrant invalid, and therefore reject defendant's argument.

"A search based on a properly obtained warrant is presumed valid" and "the defendant has the burden of proving the invalidity of that search . . . ." State v. Sullivan, 169 N.J. 204, 211 (2001). Further, unless a defendant can establish bad faith, no search or seizure made with a search warrant is unlawful merely because of technical insufficiencies or irregularities in the warrant or in the papers or proceedings to obtain it, or in its execution. See R. 3:5-7(g). To establish bad faith, a defendant must "make a 'substantial preliminary showing' of falsity in the warrant . . . [and] the misstatements claimed to be false must be material to the extent that when they are excised from the affidavit, that document no longer contains facts sufficient to establish probable cause. State v. Howery, 80 N.J. 563, 567 (1979).

When a search warrant is obtained as a result of information procured by unconstitutional means, however, the evidence seized may be suppressed based on the exclusionary rule, which "'is a judicially created remedy designed to

safeguard' the right of the people to be free from 'unreasonable searches and seizures.'" State v. Williams, 192 N.J. 1, 14 (2007) (quoting United States v. Calandra, 414 U.S. 338, 348 (1974)). The purpose of the rule is two-fold. First, it deters "'future unlawful police conduct' by denying the prosecution the spoils of constitutional violations." State v. Badessa, 185 N.J. 303, 310–11 (2005) (quoting State v. Evers, 175 N.J. 355, 376 (2003)). Second, the rule "uphold[s] judicial integrity by serving notice that our courts will not provide a forum for evidence procured by unconstitutional means." Williams, 192 N.J. at 14. In essence, the exclusionary rule is designed to deter constitutional violations by law enforcement officers.

Here, the court correctly denied defendant's motion. As noted, the court relied on Baryoh's testimony, which it found "wholly credible," when it determined that the warrantless seizure fell within the plain view exception. Since the initial seizure was proper, the exclusionary rule did not apply to suppress the physical evidence subsequently seized as a result of the lawful warrant. Furthermore, the court correctly determined that defendant failed to identify any bad faith attendant to the issuance of the warrant.

IV.

We also disagree with defendant's contention that the court improperly denied his request for an in camera inspection of Laurie's personnel records. First, we conclude that defendant waived his right to appeal that pre-trial motion when he pled guilty without conditions or reservations. Second, we conclude the court correctly denied the motion, in any event.

A defendant may enter a conditional plea of guilty and reserve the right to appeal an adverse determination of any specified pretrial motion with the approval of the court and the consent of the prosecuting attorney. R. 3:9-3(f). The right to appeal any specified pretrial motion must be placed on the record and approved by both the court and State. State v. Davila, 443 N.J. Super. 577, 586 (App. Div. 2016). "In approving a defendant's preservation of issues for appellate review, the court should act as a gatekeeper to comply with the purpose of the Rule, by precluding agreements that preserve non-justiciable or non-dispositive issues." Ibid. Here, defendant failed to preserve his right to appeal the motion. Indeed, on question 4(e) of the plea form, defendant stated that he understood he was waiving his right to appeal all pretrial motions. Not only did defendant leave blank the lines under the question that would identify the

pretrial motions he sought to appeal, he failed to seek approval from the court and the State for such a preservation.

Even if defendant had preserved the right to appeal his discovery motion, however, we agree with the court's determination that defendant failed to allege sufficient facts that would outweigh the public interest in maintaining the confidentiality of police personnel records.

We review a trial court's ruling on a defendant's discovery motion for abuse of discretion. State v. Enright, 416 N.J. 391, 404 (App. Div. 2010). The evaluation of "whether police personnel records should be disclosed" as evidence of an arresting police officer's prior bad acts "involves a balancing between the public interest in maintaining the confidentiality of police personnel records and a defendant's guarantee of cross-examination under the Confrontation Clause" of the Sixth Amendment of the United States Constitution and Article I, Paragraph 10 of the New Jersey Constitution. State v. Harris, 316 N.J. Super. 384, 397–98 (App. Div. 1998). A criminal "'defendant must be afforded the opportunity through effective cross-examination to show bias on the part of adverse state witnesses.'" State v. Williams, 403 N.J. Super. 39, 49–50 (App. Div. 2008) (quoting State v. Sugar, 100 N.J. 214, 230 (1985)). "Courts have permitted the disclosure of police personnel records where they

may reveal prior bad acts that bear 'peculiar relevance' to the issues at trial." Harris, 316 N.J. Super. at 398.

Here, defendant referenced a 2016 civil rights lawsuit against Laurie, but provided no additional information on what was alleged in that action. As described above, however, defendant did reference a portion of an ACLU petition for the investigation into the Newark Police Department by the DOJ that describes an alleged incident of misconduct in 2008 involving multiple officers who "violently removed [occupants] from [a] vehicle, handcuffed [them], and verbally abused [them]." Both occupants of the vehicle filed a federal lawsuit naming six officers, including Laurie, as defendants, though there was no indication as to what role Laurie had in the described events. We also note that defendant presented no evidence or argument to support production or review of Baryoh's records, the sole testifying witness at the suppression hearing.

Although it clearly would have been the better practice for the court to have conducted an in camera review of Laurie's files, under the unique facts presented, we conclude the court did not abuse its discretion in failing to conduct such an in camera review. Here, defendant failed to shoulder "his burden of advancing some factual predicate that would make it reasonably likely that the information in the file could affect [Laurie's] credibility . . . ." Harris, 316 N.J.

Super. at 399. By failing to connect Laurie's alleged past misconduct with allegations of similar conduct during the initial warrantless search, or search incident to a warrant, defendant provided no basis to discern whether the records sought "reveal[ed] possible biases, prejudices, or ulterior motives" or otherwise had a "peculiar relevance" to defendant's case. Harris, 316 N.J. Super. at 397-98 (citing Davis v. Alaska, 415 U.S. 308, 315, (1974)). Accordingly, we conclude the court's denial of defendant's request to conduct an in camera inspection or produce Laurie's and Baryoh's personnel files did not rise to an abuse of discretion.

V.

Finally, defendant claims his counsel was ineffective because "[he] was not advised by counsel or by the court that by pleading guilty he was waiving his right to appeal the court's previous rulings." We decline to address this claim on defendant's direct appeal, instead reserving his right to assert the argument, and any other permissible claims, in a post-conviction relief proceeding.

"Our courts have expressed a general policy against entertaining ineffective assistance of counsel claims on direct appeal because such claims involve allegations and evidence that lie outside the trial record." State v. Castagna, 187 N.J. 293, 313 (2006) (quoting State v. Preciose, 129 N.J. 451, 460

(1992)).  Typically, a "defendant must develop a record at a hearing at which counsel can explain the reasons for his conduct and inaction and at which the trial judge can rule upon the claims including the issue of prejudice."  State v. Sparano, 249 N.J. Super. 411, 419 (App. Div. 1991); see also State v. McDonald, 211 N.J. 4, 30 (2012).

The record here is not sufficiently developed to consider defendant's ineffective assistance of counsel claims.  Thus, we adhere to the practice of deferring the issue to post-conviction relief proceedings where the necessary factual record can be established.  See Castagna, 187 N.J. at 316.

To the extent not addressed, defendant's remaining arguments lack sufficient merit to warrant discussion in a written opinion.  R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-4854-17T4