**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2937-23

STATE OF NEW JERSEY,

    Plaintiff-Appellant,

v.

SHAHAAD I. JONES a/k/a
SHAHAAD JONES and W,

    Defendant-Respondent.

_____

Submitted September 9, 2025 – Decided September 19, 2025

Before Judges Gilson and Firko.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Indictment Nos. 22-07-1704 and 22-07-1705.

Jennifer N. Sellitti, Public Defender, attorney for appellant (Stefan Van Jura, Assistant Deputy Public Defender, of counsel and on the brief).

Theodore N. Stephens, II, Essex County Prosecutor, attorney for respondent (Matthew E. Hanley, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

This matter comes before us a second time. After his motion to suppress a handgun and large capacity magazine found in his vehicle was denied following remand and an evidentiary hearing, defendant Shahaad I. Jones pled guilty to unlawful possession of a handgun, N.J.S.A. 2C:39-5(b)(1),[1] and certain persons not to have weapons, N.J.S.A. 2C:39-7(b)(1). Defendant received a sentence in accordance with his plea agreement to an aggregate term of five years' imprisonment with forty-two months of parole ineligibility pursuant to the Graves Act, N.J.S.A. 2C:43-6.

On appeal from his conviction, defendant challenges the July 21, 2023 denial of his suppression motion and asserts the following sole argument for our consideration:

> THE MATTER MUST BE REMANDED TO THE TRIAL COURT FOR FURTHER PROCEEDINGS BECAUSE THE COURT FAILED TO FIND THAT THE REBUTTABLE PRESUMPTION WAS REBUTTED—INSTEAD RULING THAT IT WAS "DENIED"—AND FAILED TO ARTICULATE A STANDARD BY WHICH THE PRESUMPTION IS OVERCOME.

---

[1] Parts of this statute have been held unconstitutional under Ass'n of N.J. Rifle & Pistol Clubs, Inc. v. Platkin, 742 F. Supp. 3d 421 (D.N.J. July 30, 2024, aff'd in part, rev'd in part, Koons v. Attorney General New Jersey, Nos. 23-1900 and 23-2043 (3d Cir. Sept. 10, 2025)). However, the subsection of the statute at issue was not deemed unconstitutional.

A-2937-23

We have considered defendant's contentions in light of the record and the applicable principles of law. We conclude there is no merit to defendant's contentions and affirm.

I.

The chronology is set forth in this court's published opinion entered on May 26, 2023, in which we reversed and remanded for the motion court to conduct a testimonial hearing on defendant's motion to suppress. State v. Jones, 475 N.J. Super. 520, 524-26 (App. Div. 2023). We directed the motion court to determine whether defendant is entitled to the rebuttable presumption under N.J.S.A. 40A:14-118.5(q)(2), and whether the State can successfully rebut the presumption. Defendant claimed there were disputed facts concerning the manner in which the warrantless search and seizure occurred and that he was entitled to a rebuttable presumption the missing footage from Officer Nicholas Russell's body worn camera (BWC) would have been exculpatory. Id. at 525-26. We incorporate, by reference, the facts stated in our prior opinion to the extent they are consistent with those developed on remand.

Pertinent to this appeal, on May 20, 2022, at 5:45 a.m., Newark police officers Russell and Ian Marsh were dispatched to investigate a suspicious vehicle. Id. at 524. The caller reported to police that people were sleeping in a

black Saturn SUV on a dead-end street in a residential neighborhood since 3:00 a.m. Upon arrival, the officers observed defendant asleep in the driver's seat, and a female asleep in the front passenger seat. The record indicates there were two children on the back seat floor. The vehicle's windows were covered with a "dark tinted film." Ibid.

Russell walked to the front of the vehicle to get a better view of its occupants. Russell observed "the handle of a gun sticking out of" defendant's "right front pocket" as he slept. Ibid. The officers drew their weapons and gave verbal commands to defendant and the female passenger. After defendant raised his hands, the officers retrieved the handgun, which was loaded. Id. at 525.

Defendant countered that the dark tint on the vehicle's windows prevented the officers from observing the occupants even with the aid of their flashlights. According to defendant, Russell walked to the front of the vehicle but could not see inside of it. Defendant claimed the officers walked to the front passenger side window and ordered the passenger to lower the window, which enabled them to see inside the vehicle for the first time. Defendant asserted the officers could not see the handgun from their vantage point at that time. Russell ordered defendant out of the vehicle, handcuffed him, searched his person, and recovered the handgun. Ibid.

4

Defendant maintained that footage from Marsh's BWC showed he could not see through the vehicle's side windows, even using a flashlight, and Marsh could not clearly see the inside of the vehicle through the windshield. Ibid. Defendant's counsel informed the motion court that although Russell wore a BWC during the incident, the State advised his BWC recording could not be located. Ibid. Russell's BWC was not functioning at the time because the battery had died. However, Marsh's BWC recorded the entire incident.[2]

As detailed in our prior opinion, defendant moved to suppress the handgun and large capacity magazine. Defendant argued he was entitled to an evidentiary hearing because there were disputed facts concerning the warrantless search and seizure. Defendant also claimed that, under N.J.S.A. 40A:14-118.5(q), he was entitled to a rebuttable presumption that the missing footage from Russell's BWC would have been exculpatory. Ibid. The State countered an evidentiary hearing was unnecessary and that N.J.S.A. 40A:14-118.5(q)'s rebuttable presumption is inapplicable at the suppression hearing stage. Id. at 525-26.

The motion court determined that an evidentiary hearing was not required and concluded the only material facts relevant to the legality of the search concerned whether Russell "had seen [d]efendant's handgun inside the vehicle

---

[2] This court independently reviewed Marsh's BWC footage.

before the officers ordered [d]efendant out of the vehicle." Id. at 526. The motion court reviewed Marsh's BWC and made factual findings regarding the officers' investigation of the vehicle and what Russell's BWC footage would have shown. Ibid. The motion court determined the search was lawful and accepted the State's contention that Russell observed the handgun in plain view prior to ordering defendant out of the vehicle. The motion court also rejected defendant's claim that he was entitled to a rebuttable presumption under N.J.S.A 40A:14-118.5(q) that the recording from Russell's BWC, which was not captured or destroyed, included exculpatory evidence and opined the rebuttable presumption only applies at trial. Ibid.

On leave granted, we held the conflicting statements of fact presented by the State and defendant warranted a testimonial hearing under Rule 3:5-7(b), specifically on the issue of whether Russell actually observed the handle of the handgun in defendant's pocket in plain view from his vantage point in the front of the vehicle.[3] We also ruled that the motion court erred in concluding that N.J.S.A. 40A:14-118.5(q)(2) is inapplicable to issues presented at a suppression hearing. Id. at 535.

---

[3] The Supreme Court denied defendant's motion for leave to appeal. State v. Jones, 255 N.J. 508 (2023).

On remand, a different motion court conducted a one-day suppression hearing, at which Russell was the sole witness who testified. The motion court also reviewed the police report, BWC recordings, a BWC general order from the police department, and the January 19, 2022 Office of the Attorney General Law Enforcement Directive on BWC policy. Off. of the Att'y Gen., Law Enf't Directive No. 2022-1, Update To Body Worn Camera Policy (Jan. 19, 2022).

Russell testified that he approached defendant's vehicle with a flashlight in his hand to "illuminate" the interior so he could see the occupants. Russell explained that Marsh was standing behind him. Russell stated that defendant was reclined back in the driver's seat with his right hand above his head and was asleep. Russell testified that he saw the "handle" and "slide of a firearm sticking out of [defendant's] right pocket." Russell stated he told Marsh, "the guy has a gun." Russell testified that Marsh banged on the hood of the vehicle "[t]o awake the people inside."

Russell further testified that Marsh saw defendant's handgun "with his own eyes." Russell and Marsh drew their weapons and told the vehicle's occupants to keep their hands up "[s]o they don't reach for the firearm and try to shoot us." Russell testified he was "100% certain" that what he saw in defendant's pocket was a handgun. The prosecutor played part of Marsh's BWC

7

footage for Russell during which he identified the handle of the handgun that he had observed when he looked through the windshield.

Russell testified that he was wearing a BWC that day, but it did not record because the "battery had died." At the commencement of his twelve-hour shift—8:00 a.m. to 8:00 p.m.—Russell stated his BWC was fully charged. Russell explained that BWC's have an eight-hour battery life, and officers work twelve-hour shifts. Russell explained he had to handle the assignment he was dispatched to and could not return to the precinct to get another BWC. Russell recalled he had gone to the precinct earlier that evening to dock the BWC "for a few minutes." Russell stated department regulations required him to inspect the BWC at the start of his shift to ensure it is fully charged and working.

On cross-examination, Russell clarified that this was a "priority" dispatch call. Russell testified that defendant's vehicle was legally parked on a dead-end street but was facing the "wrong way." Thus, the vehicle was considered "suspicious." Russell testified that Marsh's BWC was properly working and "activated" when they encountered defendant. Russell explained he noted this in his report.

Following oral summations, the motion court rendered its decision on the record that day. The motion court found Russell's testimony was "very

A-2937-23

credible." The motion court credited Russell's testimony that the officers could see through the front windshield of defendant's vehicle, and Russell saw the "tan handle of a gun protruding from [defendant's] right pocket." The motion court noted it had an opportunity to watch the BWC footage, saw an "air freshener hanging from the rearview mirror," and defendant at one point "getting out of the car." Specifically, the motion court found the BWC was facing the inside of the vehicle from the driver's side and noted "you can see through the front windshield . . . through the other side."

The motion court determined that Russell credibly testified he was directed to respond to the dispatch call and did not have the "discretion" to "say no" because he had to recharge his BWC battery. The motion court found Marsh's BWC video was "operable" at the time the officers responded. The motion court reasoned the officers had "an affirmative duty to investigate" the situation based on reports from neighbors that defendant's vehicle was parked but running for a period of time, and to ascertain if the individuals in the vehicle had a "medical issue" or "could be dead."

The motion court concluded that under these circumstances, the police conduct was "completely and totally reasonable." Addressing the statute at issue, N.J.S.A. 40A:14-118.5(q), the motion court highlighted the rebuttable

9

presumption applied because one of the two responding officers—Russell—had a non-functioning BWC. However, the motion court held that the evidence, consisting of Russell's credible testimony in conjunction with Marsh's BWC footage, which captured the entire incident, overcame the rebuttable presumption.

The motion court concluded probable cause was clearly established to conduct the warrantless search, and the rebuttable presumption was overcome by the evidence. The motion court found the "plain view exception" applied, and the officers had a right to be there under the "community caretaking" doctrine. The motion court denied defendant's motion to suppress, and a memorializing order was entered. This appeal followed.

## II.

"Our scope of review in this matter is limited." State v. Ahmad, 246 N.J. 592, 609 (2021). "[A]n appellate court reviewing a motion to suppress must uphold the factual findings underlying the trial court's decision so long as those findings are supported by sufficient credible evidence in the record." Ibid. (quoting State v. Elders, 192 N.J. 224, 243 (2007)). Our "deference to those findings [is] in recognition of the trial court's 'opportunity to hear and see the witnesses and to have the 'feel' of the case, which a reviewing court cannot

enjoy.'" Ibid. (quoting Elders, 192 N.J. at 244). "A trial court's legal conclusions, however, 'and the consequences that flow from established facts,' are reviewed de novo." Ibid. (quoting State v. Hubbard, 222 N.J. 249, 263 (2015)).

III.

Defendant does not challenge the officers' dispatch in response to the call but contends the motion court erred when it "denied" the rebuttable presumption under N.J.S.A. 40A:14-118.5(q)(2), and ruled it was "not applicable." Defendant maintains the language of the statute is clear in this matter, and the presumption "shall" apply. Defendant seeks a remand to determine whether the presumption has been rebutted, and if not, "whether the presumption fatally undercuts the claim of plain view discovery of the handgun." Defendant also argues that the motion court failed to articulate what standard of proof it applied in concluding the rebuttable presumption was overcome. We are unpersuaded.

"Article I, Paragraph 7 of the New Jersey Constitution and the Fourth Amendment of the United States Constitution guarantee that '[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated.'" State v. Witt, 223 N.J. 409, 421-22 (2015) (quoting U.S. Const. amend. IV; N.J. Const. art. I, ¶ 7).

A-2937-23

Thus, under both Constitutions, warrantless searches and seizures are presumptively unreasonable and invalid. See State v. Goldsmith, 251 N.J. 384, 398 (2022); State v. Alessi, 240 N.J. 501, 517 (2020).

To justify a warrantless search and seizure, "the State bears the burden of proving by a preponderance of the evidence that [the] warrantless search or seizure falls within one of the few well-delineated exceptions to the warrant requirement." State v. Vanderee, 476 N.J. Super. 214, 230 (App. Div. 2023) (alterations in original).

It is well settled that the "[p]lain view [doctrine] is one of the recognized exceptions to the warrant requirement." State v. Johnson, 476 N.J. Super. 1, 20 (App. Div. 2023). Under the plain-view exception, the officer must be lawfully present in the viewing area when he or she observes and seizes the evidence, and the incriminating nature of the evidence to be seized must be immediately apparent to the officer. State v. Williams, 254 N.J. 8, 45 (2023) (quoting State v. Gonzales, 227 N.J. 77, 101 (2016)).

Under N.J.S.A. 40A:14-118.3(a), "every uniformed State, county, and municipal patrol law enforcement officer shall wear a [BWC] that electronically records audio and video while acting in the performance of the officer's official

duties, except" in certain limited statutorily defined circumstances. The statutory framework requires that:

> the video and audio recording functions of a [BWC] shall be activated whenever the officer is responding to a call for service or at the initiation of any other law enforcement or investigative encounter between an officer and a member of the public, in accordance with applicable guidelines or directives promulgated by the Attorney General . . . . The [BWC] shall remain activated until the encounter has fully concluded and the officer leaves the scene.
>
> [N.J.S.A. 40A:14-118.5(c)(1).]

Under N.J.S.A. 40A:14-118.5(q)(2):

> If a law enforcement officer . . . fails to adhere to the recording . . . requirements . . . or intentionally interferes with a [BWC]'s ability to accurately capture audio or video recordings:
>
> . . . .
>
> there shall be a rebuttable presumption that exculpatory evidence was destroyed or not captured in favor of a criminal defendant who reasonably asserts that exculpatory evidence was destroyed or not captured.

Russell admitted his BWC was not working because the battery was dead. However, the unrefuted evidence showed Marsh's BWC was working and captured everything going on during the incident. Moreover, the motion court found Russell's credible testimony that he looked into the front windshield of

13

defendant's car, which the motion court noted was "not darkened any more than probably factory-installed dark" because the vehicle's interior could be visualized. Under all these circumstances, the motion court found there was a "plausible explanation" for Russell's BWC not being operational.

Moreover, defendant's attempts here to rely on the rebuttable presumption and "reasonably assert[] that exculpatory evidence was destroyed or not captured," are unavailing. Relevant here, the July 28, 2015 BWC Directive[4] states:

> Although BWCs record events accurately and objectively, they do not replace the need for complete and accurate police reports and testimony. The fact that a BWC is not activated to record an encounter or event does not, of course, preclude an officer from testifying as to the circumstances of the encounter or event, or affect the admissibility of evidence. Nor does it suggest that the officer's written report or testimony is inaccurate or incomplete. However, a BWC recording can supplement and corroborate the accuracy of written reports and testimony . . . .
>
> [BWC Directive, at 3, §1.2.]

This BWC Directive also states:

> Nothing in this Directive shall be construed in any way to create any promises or any rights beyond those

---

[4] Off. of the Att'y Gen., Law Enf't Directive No. 2015-1, Law Enforcement Directive Regarding Police Body Worn Cameras (BWCs) & Stored BWC Recordings (July 28, 2015) [hereinafter BWC Directive].

A-2937-23

established under the Constitutions, statutes, and regulations of the United States and the State of New Jersey. The provisions of this Directive are intended to be implemented and enforced by law enforcement agencies that deploy BWCs, and these provisions do not create any promises or rights that may be enforced by any other persons or entities.

[Id. at 23, §15.]

Russell's BWC failure did not diminish his credibility. Russell made first hand observations of the firearm's handle and slide sticking out of defendant's right pocket. We recently held that "[t]he failure to comply with the BWC Directive does not constitute a constitutional violation." State v. Seligman, 480 N.J. Super. 509, 521 (App. Div. 2025), certif. denied, 260 NJ. 319 (2025). The BWC Directive's 2021 revision[5] added:

If a law enforcement officer, employee, or agent fails to adhere to the recording or retention requirements contained in this [p]olicy, intentionally interferes with a BWC's ability to accurately capture audio or video recordings, or violates any other provision of this policy, the officer, employee, or agent shall be subject to appropriate disciplinary action, in addition to any judicial consequences outlined in the law.

[Body Worn Camera Policy, at 26, §13.]

---

[5] Off. of the Att'y Gen., Law Enf't Directive No. 2021-5, Directive Revising Policy Regarding Use of Body Worn Cameras (BWCs) and Store BWC Recordings (May 25, 2021) [hereinafter Body Worn Camera Policy].

Defendant did not demonstrate at the suppression hearing anyone affiliated with law enforcement "purposely or willfully destroyed" Russell's BWC footage. Indeed, there is no evidence in the record to suggest Russell's BWC footage existed, let alone was lost, suppressed, or destroyed in bad faith. Bad faith requires more than negligence; it requires a deliberate effort to deny a defendant access to exculpatory evidence. See State v. Peterkin, 226 N.J. Super. 25, 42-43 (App. Div. 1988). Moreover, as the motion court correctly recognized, Marsh's BWC recorded Russell's observations of the handgun protruding from defendant's right pocket. Thus, the presumption that exculpatory evidence was destroyed or not captured was overcome by Russell's "very credible" testimony.

Finally, we reject defendant's argument that the motion court failed to articulate a particular burden of proof in finding the presumption had been overcome. The record is abundantly clear that the evidence presented would have satisfied either the preponderance of the evidence or clear and convincing evidence standard.

On this record, we discern no error in the motion court's decision denying defendant's motion to suppress. Therefore, defendant has failed to establish any grounds for a remand.

16

Affirmed.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

*M.C. Harley*

Clerk of the Appellate Division

A-2937-23